ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY

COMPANY *v.* GIBSON.

## Opinion delivered March 31, 1913.

1. RAILROADS—DUTY TO TRESPASSER ON TRACK—DISCOVERED PERIL—PRESUMPTION—BURDEN OF PROOF.—In an action for damages against a railroad company for injury to a trespasser upon its track the burden of proof is upon plaintiff, in order to recover damages for the injury, to show that the employees in charge of the train discovered the peril of deceased's position in time to have avoided injuring him, and negligently failed to use proper means to avoid injuring him after discovering his peril; and the mere proof of the killing does not raise a presumption that the killing was the result of negligence. (Page 438.)

2. RAILROADS—DUTY TO TRESPASSER ON TRACK—DISCOVERED PERIL—BURDEN OF PROOF.—Under Act 284, p. 275, of the Public Acts of 1911, the proof of injury to a trespasser upon defendant's track under such circumstances as to raise a reasonable inference that the danger might have been discovered and the injury avoided if a lookout had been kept, makes out a *prima facie* case and the burden of proof then devolves upon the railroad company to show that a proper lookout was kept as required by the statute, and that it used ordinary care to prevent the injury after the discovery of his perilous position. (Page 441.)

3. RAILROADS—DUTY TO TRESPASSER ON TRACK—NEGLIGENCE.—In an action against a railroad company for damages for the negligent killing of deceased, under Act 284, p. 275, Acts 1911, an instruction is improper which declares that failure on the part of the railroad company to keep a constant lookout or to exercise ordinary care to avoid injuring deceased after his peril had been discovered rises to the grade of wanton or reckless conduct. (Page 442.)

4. INSTRUCTIONS—PLEADING—DAMAGES.—In an action for damages against a railroad for the negligent killing of deceased, where the complaint does not allege as an element of damage the loss to the children of the deceased of parental care and training, an instruction authorizing such damages is erroneous. (Page 442.)

Appeal from Hempstead Circuit Court; *Jacob M. Carter*, Judge; reversed.

### STATEMENT BY THE COURT.

This is a suit for damages for the wrongful death of O. E. Gibson, alleged to have been caused by the negligence of appellant company, in running a train over

him and not keeping a constant lookout, the complaint alleging:

"That the servants of the defendant operating the train did not keep a constant lookout, as required by law, and that had they kept such a lookout they could have discovered the deceased's peril in time to have prevented injury to him by the exercise of reasonable care."
"That they negligently, wilfully and wrongfully ran over and killed the deceased, when by the exercise of reasonable care, they could have prevented injuring him."

The answer denies all the material allegations of the complaint and alleges that about 5 o'clock on the afternoon of the day of the injury the deceased was lying down drunk, or asleep, on the side of the railroad track south of Hope as its passenger train approached and while the operatives in charge of said train were keeping a lookout, and, on account of the darkness, its servants failed to discover deceased in time to stop the train, but immediately upon seeing him did everything in their power to stop the train, but were unable to do so and pleaded the negligence of deceased in bar of the action.

O. E. Gibson was killed by appellant's train on the 27th day of January, 1912, south of Hope, shortly after 5 o'clock. The train was due, under its schedule, at Hope at 4:49, was from forty-five to fifty minutes late, making its time of arrival at Hope about 5:39 and was running about thirty miles an hour. The track was straight for a distance of about three miles south of Hope and the trainmen noticed a dark object on the left-hand side of the track, which the engineer took to be a tie lying down beside the track and a little too close; he discovered it when he was about 500 or 600 feet from it, kept a close watch from then on, fearing it wasn't in the clear, although he could see it was on the outside of the track entirely and when he got within about 200 feet of it thought it might be a man and began to stop the train. The emergency brakes were at once applied and the whistle blown and bell rung. The train struck the man and the last coach cleared the place where he was

struck before it was stopped. The train consisted of an engine and eight cars. The engineer testified it was as good a stop as could be made; that nothing else could have been done to stop the train quicker.

The fireman testified likewise; that after discovering that the object beside the track might be a man, all efforts possible to stop the train were made and the bell was rung and the whistle blown and "the air put in the emergency." That they were 500 or 600 feet from the object when they first discovered it. That he was sitting on his seat in the cab and was within 150 feet from the object when he first concluded it might be a man and rang the bell and hollered to the engineer. The engineer, he believed, also hollered at him and he had put the air over in the emergency. He said the train was making about thirty miles an hour.

Expert locomotive engineers testified relative to the effect of an electric headlight between sundown and dark and that it did not give as good light at that time as after dark; that a man could be seen by such a light in the twilight 500 or 600 feet, standing, and would be more perceptible if on the track than to the side of it; that from 200 to 250 feet the engineer should be able to discern the difference between a crosstie and an animate object the size of a man, his ability to do so depending much upon the particular time between sundown and dark, and the position in which the object was lying. That an ordinary passenger train going into Hope on that grade of track where deceased was injured should be stopped in between 750 and 800 feet, going at the rate of thirty miles per hour. That it would take about three seconds for the brakes to take full effect against the wheels; that the train running forty-four feet a second would go 140 feet before the brakes had the full effect and it could not be stopped in less than 750 or 800 feet. If the train was running eighteen miles an hour the train could be stopped in between 475 and 500 feet, and could not be stopped in 300 feet. The other expert testified likewise and said between sundown and dark the effect

of the headlight to render objects discernible beside the track is very poor. Between sundown and dark your light is not much good; there is a shadow goes with these lights. You will see a shadow and think it is something else. Assuming that the engineer is on his engine and there is a man lying with his head about the end or between the ties with his feet extending away from the track, the engineer would be doing mighty well at that time of night, if he was able to discover it was a man a block distant. If he could see that there was an object there for a distance of 450 feet he would be doing mighty well. The engineer would be somewhere close to a block of it before he could discern that the object the size of a man beside the track was a man in the twilight hour with the headlight burning. If he did discover it was a man and put on his emergency brake about three seconds would elapse before the clutch would begin to take hold and then it would depend upon the speed he was making. The train should go about 600 or 700 feet before the stop.

If Mr. Gibson was lying beside the track, with his head up on the ends of the ties or between the ends of the ties near the rail, it would not have been possible to have stopped the train with eight cars before striking him. He could not have stopped the train in time to have prevented striking him after he first discovered the object there. He said if a train was going only eighteen miles an hour it could be stopped in about 500 feet, but that the last test made by him was of a train going twenty miles an hour with a train of six cars, with a grade of one and one-half per cent and a stop was made in 720 feet.

There was testimony to the effect that Gibson had been drinking during the day and several persons saw him sitting on the side of the railroad track; one witness stated that he passed him sitting there, and that he had gone about 1,000 yards down the track when he met the approaching train and stepped off the track to let it pass; that before he did so he looked back and could see

Gibson still sitting up and could see the headlight shining on him. That the engineer was looking out of the window towards Hope and he thought at first he was looking at him, but when the engine passed the engineer seemed, to witness, to be looking ahead at the man on the track. This witness said it was dark, but that it was light enough to see.

Testimony was introduced showing the age of deceased, the amount of his contributions to his wife and infant daughter, who was past seventeen years of age, no claim being made for damages for pecuniary loss to the children over age. One or two witnesses stated that no signals were given before this train stopped, but the great preponderance of the testimony shows that signals were given before the train came to a standstill.

The court instructed the jury, giving, among others, over appellant's objections, instructions numbered 1, 3 and 7, as follows:

No. 1. "You are instructed that whenever it is shown by the plaintiff that deceased was killed by the operation of the train the law presumes that the killing was negligent, and the plaintiff is entitled to recover, without showing anything further, and the burden is upon the defendant to show that it was not guilty of any negligence, causing deceased's death."

No. 3. "You are instructed that the defendant can not be held liable for negligence in this case, if the deceased by his own negligence contributed to the injury complained of, unless it was a wilful injury or one resulting from the want of ordinary care on the part of the defendant to avert it after the negligence of the deceased had been discovered. or resulting from a neglect to keep a constant lookout for persons and property on the tracks, but such failure either to keep such constant lookout or to exercise ordinary care to avoid injuring deceased after his peril had been discovered, if you find it was discovered. or find that defendant's servants failed to keep a lookout, rises to the grade of wanton or reckless conduct and renders immaterial the inquiry as to

the contributory negligence of the deceased in exposing himself to a danger."

No. 7. "If you find for the plaintiff, your verdict should be for such a sum of money as will be a just and fair compensation with reference to the pecuniary injuries resulting from the death of said O. E. Gibson, to the widow and children of said deceased, and you are further instructed that, in estimating the pecuniary injury, if you believe from the evidence that the widow. and children of said Gibson, deceased, have sustained any injury for which the defendant is liable, you have a right to take into consideration the support of the said widow and minor child of the said deceased, and the damages, if any, sustained by the minor child by the loss of the instruction and physical, moral and intellectual training of the minor children by the deceased, and also the age of the said minor child, and also the age of the deceased, his condition of health, his probable expectancy; all these things are proper for you to consider in arriving at the amount of damages."

The jury returned a verdict and from the judgment thereon the railroad company prosecutes this appeal.

*E. B. Kinsworthy, W. V. Tompkins* and *T. D. Crawford,* for appellant.

1. The first instruction would probably be correct where a person is killed at a highway crossing and the plaintiff's evidence does not make out a case of contributory negligence against him; but it has no application where the plaintiff's testimony shows that he was a trespasser and guilty of negligence which caused his injury and death.   65 Ark. 235; 69 Ark. 380; Act 284, Acts 1911, § 1, makes no change in the statute which it amends, Kirby's Dig., § 6607, with reference to the burden of proof.   The statute only places the burden on the railroad to prove that the lookout has been kept.

2. The third instruction errs in stating that the *failure to keep* a lookout rises to the grade of wanton or reckless conduct and renders immaterial the inquiry as to the contributory negligence of the deceased in expos-

ing himself to danger. It makes the defendant liable for a failure to keep a lookout whether it would have been effective or not. It is contrary to the evidence, both that a constant lookout was kept and that there was no negligence after the peril of deceased was discovered. 69 Ark. 380.

3. The seventh instruction does not state the correct measure of damage. 60 Ark. 550.

4. If the trainmen were keeping a constant lookout, and stopped the train as soon as possible after discovering that deceased was a human being and in danger of being struck, appellant is not liable, and the jury should have been so instructed, and also that the burden was on the plaintiff to prove that they failed in this duty with respect to stopping the train. 47 Ark. 497.

*Steve Carrigan, Jr.,* and *Mehaffy, Reid & Mehaffy,* for appellee.

1. The first instruction is correct. The act of 1911 permits a recovery "notwithstanding the contributory negligence of the party injured, where, if a lookout had been kept, employees in charge of the train could have discovered the peril of the person injured in time to have prevented the injury, etc." The Townsend case, 69 Ark. 380, can have no application here because the act changes the burden and puts it on the defendant to show that it was not negligent in failing to keep a lookout. Kirby's Dig., § 6773; 63 Ark. 636; 65 Ark. 235; 99 Ark. 228, and cases cited; *Id.* 422, and cases cited.

2. There is no error in the third instruction. Since it is the law that appellant is liable if it failed to keep a lookout and by keeping a lookout it could have discovered the peril of deceased in time to have avoided injuring him, it can make no difference whether the failure to keep a lookout rises to the grade of wanton or reckless conduct or not. 151 S. W. 246; 141 S. W. 81; 152 S. W. 947; 92 Fed. 470; 47 S. E. 614; 23 S. E. 265; 29 S. W. 232; 54 Tex. 618; 33 S. E. 240; 45 S. E. 657.

3. There is no error in the seventh instruction. It does not say, and no one contends, that to consider the

support of the widow and minor child is the measure of damages.  60 Ark. 550; 81 Ark. 274; 57 Ark. 307; 93 Ark. 183; *Id.* 127; 101 Ark. 315

KIRBY, J., (after stating the facts.)  Instruction numbered 1 is erroneous and was prejudicial.  This court has frequently held that when the damage to property is shown to have been caused by the operation of trains coming in contact with it, that a *prima facie* case of negligence is made against the railroad company.

In *Green* v. *St. Louis, I. M. & S. Ry. Co.,* 99 Ark. 228, the court said:

"It is true that, in suits against a railroad company for the recovery of damages done to property by the running of its trains, the burden of proof of showing due care upon its part is cast upon the railroad company by virtue of the statute of this State making railroad companies responsible for all damages done or caused by the running of their trains."  (Citing cases.)

It has likewise been held that proof of the injury to a person at road crossings or in the street, where he had the right to be, by the operation of a railroad train, is *prima facie* evidence of negligence on the part of the railroad company.  *Little Rock & F. S. Ry. Co.* v. *Blewitt,* 65 Ark. 237; *St. Louis, I. M. & S. Ry. Co.* v. *Neely,* 63 Ark. 638.

But the court has invariably held that no such presumption arises in case of an injury to a trespasser by the operation of railroad trains and that the burden of proof in such cases devolves upon the plaintiff to show in order to recover damages for the injury that the employees in charge of the train discovered his perilous position in time to have avoided injuring him and negligently failed to use proper means to avoid injuring him after discovering his peril.  *St. Louis, I. M. & S. Ry. Co.* v. *Watson,* 97 Ark. 560; *Jones* v. *St. Louis, I. M. & S. Ry. Co.,* 96 Ark. 370; *Chicago, I. T. & P. Ry. Co.* v. *Bunch,* 82 Ark. 522.

Nevertheless, it is contended that under the lookout statute of May 26, 1911, appellee was entitled to said

instruction and also instruction numbered 3, as given.

The first section of that act provides:

"It shall be the duty of all persons running trains in this State upon any railroad to keep a constant lookout for persons and property upon the track of any and all railroads, and if any person or property shall be killed or injured by the neglect of any employees of any railroad to keep such lookout, the company owning or operating any such railroad shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout, notwithstanding the contributory negligence of the person injured, where if such lookout had been kept, the employee or employees in charge of such train of such company could have discovered the peril of the person injured, in time to have prevented the injury, by the exercise of reasonable care after the discovery of such peril, and the burden of proof shall devolve upon such railroad to establish the fact that this duty to keep such lookout has been performed."

This statute is an amendment to section 6607 of Kirby's Digest, our first statute requiring a lookout to be kept by the operatives of a railroad train, which was enacted to avoid the effect of certain of the court's decisions, relative to the liability of railroad companies for injuries caused by the operation of their trains. The court construing it held that it did not affect the defense of contributory negligence in the case of a trespasser and that it was not its purpose to abolish the rule of contributory negligence in such cases.

In *St. Louis S. W. Ry. Co.* v. *Dingman*, 62 Ark. 252, the court said: "It simply requires the employees in charge of trains to keep a lookout, and provides that the railroad company shall be liable for all damages resulting from the failure to keep such lookout."

In *St. Louis, I. M. & S. Ry. Co.* v. *Leathers*, 62 Ark. 238, the court said: "In our opinion it makes the failure to keep a constant lookout by the employees of a railroad company negligence, and puts the burden upon the railroad company to establish the fact that it has

kept such lookout. This is the extent of the change made in the law by this statute, which, in our opinion, does not, in such cases as this, abrogate the doctrine of contributory negligence.''

In the Dingman case the court, after stating the rule before the act, said: ''But now the company is liable if, by proper care and watchfulness, it could have discovered and avoided the danger.''

Now this last act provides the railroad company shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout, notwithstanding the contributory negligence of the person injured, where, if such lookout had been kept, the employee, or employees, in charge of such train could have discovered the peril of the person injured in time to have prevented the injury by the exercise of reasonable care after the discovery and the burden of proof devolves upon the railroad company to establish the fact that the duty to keep the lookout has been performed as in the first act. It was the evident purpose of this act to provide a different rule of liability against a railroad company causing an injury by the operation of its trains in case of failure to keep a lookout for persons on its track than was prescribed by the old act, which required the same lookout to be kept, and placed the burden of proof upon the railroad company in case of an injury to establish the fact that the duty to keep a lookout had been performed. It was not intended, however, that upon proof of the killing of a trespasser by the operation of a train that the presumption should arise that the killing was negligent and the plaintiff entitled to recover damages without showing anything further, and casting the burden of proof upon the company to show that it was not guilty of any negligence, causing the death, as declared in said instruction numbered 1.

Before the adoption of the amended act, the railroad company was only liable to the payment of damages for the injury to a trespasser in case it discovered his perilous position in time to have avoided the injury,

and failed to use reasonable care to prevent such injury after such discovery, and the burden of proof to show these facts was upon the one seeking a recovery for the injury. If it had been the intention to make the railroad company liable by the passage of this statute, *prima facie,* for all injuries to persons upon the tracks, unless it could show that it kept a proper lookout and did not discover the person injured in time to have avoided the injury, and after discovering his perilous position used all reasonable care to avoid the injury, it would have been easy enough to have said so and required different language to provide such rule.

In *Central Railway Co.* v. *Lindley,* 105 Ark. 294, 151 S. W. 246, a case of an injury to horses, not by the train striking them, but by frightening them in its operation and causing them to jump into a trestle, the court, construing this lookout statute, said:

"In other words, the statute makes it the duty of the railroad companies to keep a lookout for property upon its tracks, and makes it liable for all injuries that occur by reason of its failure to perform this duty. Under the lookout statute, when the plaintiff has proved facts and circumstances, from which the jury might infer that his property had been injured on account of the operation of the train and that the danger might have been discovered and the injury avoided if a lookout had been kept, then he has made out a *prima facie* case, and the burden is on the defendant to show that a lookout was kept, as required by the statute."

Before its passage, it had only been held that a *prima facie* case of negligence was made out against the railroad company on proof of injury to the animal by the operation of a train, by actually coming into contact with it, and the rule in this respect is not changed by the statute. We think the construction there placed upon the act applies to persons alike and that the railroad company now owes the same duty to keep a lookout to avoid injuring the trespasser upon its tracks, and that upon proof of injury to such person by the operation

of its trains under such circumstances as to raise a reasonable inference that the danger might have been discovered and the injury avoided if a lookout had been kept, that a *prima facie* case is made and the burden of proof then devolves upon the railroad company to show that a proper lookout was kept as required by the statute and that it used ordinary care to prevent the injury to the person after his discovery in a perilous position in order to escape liability for such injury.

Instruction numbered 3 should not have declared that the failure to keep a constant lookout or to exercise ordinary care to avoid injuring deceased after his peril had been discovered, rises to the grade of wanton or reckless conduct. The statute declares the duty and it was sufficiently brought to the jury's attention, without such expression, which could not assist them in arriving at a proper verdict.

Instruction numbered 7, relative to the measure of damages, is erroneous, under the pleadings; the loss of parental care and training to the minor children, not having been alleged as an element of damages in the complaint. *Helena Hardwood Lbr. Co.* v. *Maynard,* 99 Ark. 377; *St. Louis, I. M. & S. Ry. Co.* v. *Sweet,* 57 Ark. 287.

For the errors indicated, the judgment is reversed and the cause remanded for a new trial.