CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v.
GUNN.

Opinion delivered April 13, 1914.

1. RAILROADS—DEATH OF TRESPASSER—DUTY TO MAINTAIN LOOKOUT—
HEADLIGHT.—The lookout statute which requires trainmen to keep
a lookout for trespassers on the tracks, includes the implied duty
to equip the locomotive with a headlight sufficient to enable the
engineer to keep a proper lookout.    (Page 406.)

2. RAILROADS—DEATH OF TRESPASSER—DUTY TO KEEP LOOKOUT AND TO
WARN.—In an action for damages for the negligent killing of a tres-
passer on defendant's railway track, when it appeared that the
engineer saw a light on the track ahead of him but gave no warn-
ing except a whistle for a crossing, and made no effort to stop the
train until within a short distance of deceased.  Held, the evidence
was sufficient to justify a recovery.    (Page 407.)

3. EVIDENCE—ACTION FOR WRONGFUL DEATH—CHARACTER OF DECEASED.—
In an action for damages against a railroad company for the
wrongful death of deceased, held it was not prejudicial error to
exclude evidence that deceased, a white man, was in the company
of a negress of immoral character when he was killed, other evi-
dence of his immoral and depraved character having been intro-
duced.    (Page 408.)

4. EVIDENCE—ACTION FOR WRONGFUL DEATH—DAMAGES.—In an action, to
recover pecuniary damages only, against a railroad for the wrong-
ful killing of deceased, it was not error to admit testimony show-
ing deceased's affection for his children, and the likelihood of his
future contributions to their support.    (Page 409.)

5. TRIAL—ARGUMENT OF COUNSEL—PREJUDICE.—When no complaint is
made that a verdict is excessive, improper argument of counsel
will be deemed harmless, where its only injurious effect is to en-
hance the damages.    (Page 410.)

Appeal from Monroe Circuit Court; *John D. DeBois*,
Special Judge; affirmed.

STATEMENT BY THE COURT.

Appellee instituted this action against appellant to
recover damages for the death of his intestate, which it
was alleged was caused by the negligence of appellant.
The facts are substantially as follows:

An inspector of appellant lived at Brinkley, Ark.,
and used a speeder on the tracks of appellant in the dis-
charge of his duties.  He was not permitted to use the

speeder after dark, nor was he allowed to employ any
one as a substitute. He did, however, employ Charles
L. Hodges to perform his duties for him; but appellant
company had no knowledge of this fact. About 11
o'clock on the night of October 11, 1912, Charles ·L.
Hodges, who was a white man, left a negro dance hall in
Brinkley with a negro woman and a negro man, to go to
Biscoe, a station on appellant's line of railway about
thirteen miles west of Brinkley. They went on the
speeder which Hodges had been using while discharging
the duties of the inspector. When they got to Biscoe,
the negro man, who had been carried along for
the purpose of helping Hodges propel the speeder, stayed
with the speeder and Hodges and the negro woman went
to a saloon and stayed about an hour. They returned
with two quarts of whiskey and some beer, and appeared
to have been drinking while at the saloon. Hodges and
the negro woman both continued to drink on the way
home, and the negro man who was with them testified
that they were drunk. When they had arrived at a
point about one mile west of Brinkley, a passenger train
going east struck the speeder, and Hodges was thrown
from it and killed. The track of appellant from Brink-
ley west, as far as Eden, which is five miles distant, is
perfectly straight. It was dark at the time the passen-
ger train struck the speeder, and the engine on the pas-
senger train had no headlight, except a lantern. The ne-
gro man who was on the speeder with Hodges testified
that he looked back every time he thought of it and did
not observe the approach of the train until it was about
to strike the speeder; that the train was running pretty
fast, and gave no warning of its approach. That he
jumped off of the speeder just before the train struck it;
that he was not drunk at the time, and had only taken
one drink of whiskey on the trip.

John T. Maloney, for appellant, testified substan-
tially as follows: I was locomotive engineer on the pas-
senger train that killed Hodges. I took my train out of
Little Rock on that night at 1:05 a. m. for Memphis. The

engine had an electric headlight on it, and it was in perfect order when I left Little Rock. The headlight was the regular size, and remained in perfect condition until I got to Biscoe. When I got there I had to take the siding, and, in compliance with the rules, I turned the headlight off. When the train for which I took the siding had passed by, I turned on the steam to the headlight, but the headlight would not burn. I examined the wires and lamp in the headlight, and examined the dynamo. I then found that the wire connecting the magneto insulator was broken, and thus cut off the current from the headlight. I could not find any wire with which to patch the headlight, and took the porter's lantern and turned the light up to what we would call about four candle-power light, and put it in the headlight. I then proceeded on my way at the rate of about thirty-five miles an hour. When I got near Brinkley, I saw that I was about forty-five minute late, and the train was still running at about thirty-five miles an hour. I noticed a light on the track about a quarter of a mile ahead of my engine. I was then between Eden and Brinkley and near what we call the second road crossing out of Brinkley. There is a little dip, or sag, there. I blew the whistle for the second road crossing out of Brinkley, and as soon as I came out of the sag I blew the road crossing whistle again. When I first saw the light, I thought they had sent a messenger out from Brinkley to see what our trouble was. When I got within about three or four telegraph poles of the light, I said to myself, "The fellow must be walking along;" and I reached up and blew the road crossing whistle again. When I got within about fifty feet of the light, I saw there was a speeder on the track, and blew the whistle four or five times and slammed on the emergency brake.

On cross examination the engineer stated that he could have stopped the train in time to have avoided striking the speeder if he had tried to do so when he first saw the light on the track; that he did not at first see any object on the track, but saw the lantern; that he

thought it was either some one coming to meet them to see why the train was late, or that it was a passenger train.

Other evidence will be referred to in the opinion. There was a verdict and judgment for appellee in the sum of three thousand dollars, and the case is here on appeal.

*Thos. S. Buzbee* and *George B. Pugh,* for appellant.

1. The court erred in excluding testimony offered by appellant as to specific acts and specific personal conduct of deceased, tending to prove that he was a man of dissolute habits, of no pecuniary value, but rather a detriment to his children. 42 N. E. 227; 36 S. W. 776.

The court further erred in excluding testimony offered to prove generally what character of man he was. 2 Heisk. 580.

2. Since there was no averment in the complaint that the children had sustained any loss by reason of being deprived of instruction and moral training, it was not proper to introduce proof to show that deceased taught his daughter arithmetic, her Sunday school lessons, etc. 100 Ark. 526; 74 Ark. 326; 100 Ark. 107.

3. Counsel's statement in argument that if he had brought the suit for more than three thousand dollars the case would have been removed to the Federal court, etc., was improper and prejudicial. 65 Ark. 619; 105 Ind. 383; 101 Ind. 450; 63 N. C. 53; 126 Ill. 150; 9 Am. St. Rep. 547; 87 Ill. 244; 48 Ark. 131; 61 Ark. 430; 146 S. W. 520.

4. It is admitted that Hodges was a trespasser, and that prior to the amendment of the lookout statute, there would be no right of recovery in this case. Under the old law, Kirby's Dig., § 6607, no obligation arose until the peril of the trespasser was discovered. Under the amendments, Acts 1911, page 275, there is a duty to exercise ordinary care to prevent injury to a trespasser after his peril could have been discovered by keeping a lookout, so that unless the railroad company is guilty of some act of negligence after a trespasser could have been

discovered, it is not liable. In this case, if there was any negligence with reference to the headlight, it occurred long before Hodges could have been discovered on the track, and is, therefore, unavailing to him. 196 Fed. 878; 99 Ill. App. 296; 104 N. W. 431; 99 C. C. A. 328; 79 Ark. 225; 82 Ark. 522; 83 Ark. 300; 95 Ark. 190; 96 Ark. 366; 102 Ark. 160; 93 Ark. 24.

*C. F. Greenlee,* for appellee.

1. The testimony excluded by the court was clearly inadmissible under the pleadings in the case. The testimony was positive as to the amount deceased brought home each month after pay-day, and expended upon his family, and appellant did not offer to prove that he expended most, or any part, of his earnings upon persons other than his family.

2. The testimony as to deceased having taught his little girl, etc., was admissible to rebut the irrelevant testimony offered by the appellant to show that he was an unworthy father. 10 Cyc. 644, 645; 69 S. W. 474.

3. The argument of appellee's counsel was not improper nor prejudicial.

4. The evidence makes it certain that the perilous position of deceased was discovered by appellant's engineer in time to have avoided killing him, had the engineer exercised ordinary care. Under the circumstances, when the light was discovered, care should have been exercised. 46 Ark. 513; 50 Ark. 477; 69 Ark. 380; 74 Ark. 478; 89 Ark. 496; 90 Ark. 398; 105 Ark. 284. For construction of the lookout statute as amended by the Acts of 1911, page 275, as applied to trespassers, see 34 Ark. Law Rep. 439; 35 *Id.* 342; *Id.* 416.

HART, J., (after stating the facts). In the case of *Chicago, R. I. & P. Ry. Co.* v. *Bryant,* 110 Ark. 444, recently decided by this court and also reported in 162 S. W. 52, the court said:

"Prior to the passage of the new lookout statute quoted above, there was, of course, no liability on the part of a railroad company to trespassers or those guilty of contributory negligence, except on account of negli-

gence in failing to avoid an injury after discovering the perilous situation of the injured party. But the law as it now stands requires the train operatives to keep a lookout for trespassers and all others, and makes the company liable for negligence in that regard, notwithstanding the contributory negligence of the injured party. *St. Louis, I. M. & S. Ry. Co.* v. *Gibson,* 155 S. W. 510, 107 Ark. 431. The Legislature, in passing this statute, necessarily had in view all of the requirements of the law imposed for the protection of persons on the track, and attempted to lay down a rule of conduct for those in charge of the train. This, of course, implied a duty to comply with all the requirements of the law exacted for the protection of persons on the track, and, in order to make the new lookout statute effective, it must include the duty to equip the locomotive with a headlight of sufficient power and brilliancy to enable the engineer or motorman to keep a proper lookout. It can not be the state of the law that the trainmen are required to keep a lookout and yet the company not bound to provide means for making the lookout efficient. The purpose of the statute in requiring a headlight of high candle power was to enable the engineer and fireman to discover objects on the track, and when the Legislature subsequently declared the duty of those operatives to maintain a lookout, and fixed liability on the part of the company for their failure to do so, this necessarily carried with it the statutory duty of the company to equip the locomotive with proper headlight, and to make the company liable for damages caused by a failure to do so.''

Objection is made by counsel for appellant to certain instructions given by the court; but we do not deem it necessary to set out the instructions or to discuss them in detail. When the principles of law announced in the case quoted from above are considered, we are of the opinion that the instructions were as fair to the appellant as it could ask. The court instructed the jury that if it should find from the evidence that at the time decedent was struck and killed on appellant's track he was

not at a regular road crossing, and if it further found that the engineer or fireman on the engine was keeping such a lookout toward the front as was practicable under the circumstances, and that, by reason of the fact that the electric headlight had gone out and could not be re-lighted just before the accident, they could not see far enough in front of the train to enable them to stop the train in time to prevent striking the decedent after dis-covering him on the railroad track, the appellant was not liable, and that the verdict of the jury should be for ap-pellant. The court further said in this connection that when appellant discovered a light ahead on the track it should have used reasonable care in approaching the same. This instruction presented appellant's theory of the case in as favorable a light as it was entitled to.

We are also of the opinion that the evidence justi-fied the verdict. The accident occurred between Brink-ley and Eden. The track between those points was per-fectly straight. The engineer was running his train at the rate of thirty-five miles per hour when he first saw the light about a quarter of a mile away. He admits that he could have then stopped the train in time to have avoided striking the speeder on which decedent was riding. It was dark, and the engineer should have proceeded more cautiously, knowing that his electric headlight was not in use, than he would have done had it been in operation. The engi-neer testified that he thought the light on the track in front of his engine was from some one coming out from Brinkley to meet the train to ascertain why it was late. The jury had a right to carry into the jury box their knowledge gained in the every-day affairs of life, and it might have found that the engineer should have known that a lantern carried in the hands of a person walking on the track would sway with the motion of his body, and that one carried on a hand car propelled on the track would remain in a stationary position; that by observing the light in question he could have ascertained that it re-mained in a stationary position, and was, therefore, no-

tice to him that it was a light on a hand car being propelled on the track, and that the persons on the hand car were oblivious to the approach of the train. Under these circumstances, he gave no warning of the approach of the train, except to blow the whistle for the crossing. The train was running at the rate of thirty-five miles per hour, and he made no effort whatever to stop it until he was within a very short distance of the speeder. He was only about fifty feet away when he applied the emergency brakes. Therefore, the jury was justified in finding a verdict for appellee.

Appellant offered to prove that the negro woman who accompanied the decedent to Biscoe was a strumpet, and that they were at a negro dance hall, which was also a house of prostitution, at the time decedent left with her and the negro man to go to Biscoe; but the court refused to admit this testimony. The decedent was a white man and lived with his mother and sister. He had two children—a daughter twelve years of age and a son six years old. It was admitted that decedent was instantly killed. It was not alleged in the complaint that the children lost anything in the way of moral or mental training, and the only element of damage sought to be recovered was for the contribution that decedent made to their support. Counsel for appellant therefore contend that the excluded testimony would have tended to show that decedent was a man of dissolute habits and depraved disposition, and that, on that account, not likely to contribute any further to the support of his children. Appellant was permitted to prove, by other evidence, that the decedent was a constant drinker and frequently in the habit of getting drunk; that decedent was at a negro dance hall before he left for Biscoe on the night he was killed; that both he and the negro woman got off of the speeder at Biscoe and went to a saloon and got some beer and whiskey and remained away from the speeder for about an hour. The evidence showed that decedent was a white man, and the testimony admitted tended as fully to show the dissolute character and depraved disposition

as the testimony excluded, and we do not think the action of the court in refusing the offered testimony was prejudicial error for which the judgment should be reversed.

The court permitted the sister of the decedent to testify that the deceased would teach his little girl her Sunday school lessons and wanted her to go to Sunday school, and made her practice her music lessons. It is urged by counsel for appellant that the admission of this testimony was erroneous because it was not alleged in the complaint that the children lost anything on account of the moral or mental training by their father. They say the testimony was objected to specifically on that ground. As we have already seen, the court limited the recovery of appellee to the pecuniary loss sustained by decedent's children. The testimony was not admitted for the purpose of showing that the children had suffered a loss of mental and moral training by their father on account of his death, but was admitted for the purpose of proving that the father had an affection for his children, took an interest in their welfare, and that, on that account, would be likely to contribute in the future to their support. Therefore, we do not think the testimony was erroneous.

It is next urged by counsel for appellant that the judgment should be reversed on account of the closing argument of counsel for appellee. It appears from the record that the attorney for appellee stated to the jury in his closing argument that if he had brought this action for more than three thousand dollars the appellant would have removed it to the Federal court; that he brought the suit for the maximum amount that he could sue for in the State court, and urged the jury to return a verdict for the full amount sued for. At the time of decedent's death, he was forty-two years of age, and his life expectancy was twenty-six and a half years. It was admitted that he was in good health at the time of his death. According to the testimony of his sister, he had been at work pretty regularly for several years before his death. He had been making from $1.50 a day to

$75 per month. He contributed about $25 per month to the support of his children. She also stated that he was not in the habit of getting drunk and did not spend most of his wages for whiskey; that he contributed regularly to the support of his children. Now, the only effect that counsel for appellant contends the argument had upon the jury was to arouse their prejudice and tend to make them return a larger verdict in favor of appellee than they otherwise would have done. Counsel for appellant does not contend here that the verdict is excessive, and have not asked us to reverse the judgment on that account. While the proof introduced by appellee as to the contribution made by decedent to the support of his children is contradicted by that introduced by appellant, yet the jury were the judges of the credibility of the witnesses and the weight to be given to their testimony, and, under the testimony adduced by appellee, the jury would have been warranted in rendering a larger verdict than they did. Therefore, we do not think we should reverse the judgment on account of the argument, even if we concluded that it was erroneous. *St. Louis, I. M. & S. Ry. Co.* v. *Smith,* 82 Ark. 105. In that case the court held that an improper argument will not be deemed prejudicial where its only injurious effect would have been to enhance appellee's damages, if appellant does not complain that the verdict was excessive.

The judgment is affirmed.