RUSSELL v. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY.

Opinion delivered June 8, 1914.

1. RAILROADS—INJURY TO PERSON ON TRACK—LOOKOUT STATUTE.—Under the lookout statute, a railroad company is liable for an injury to any person on its tracks, caused by the operation of a train, whether trespassers or not, if the injury was caused by the failure of the trainmen to maintain a lookout, when, if a proper lookout had been kept, the injury could have been avoided. (Page 357.)

2. RAILROADS—INJURY TO PERSON ON TRACK—LOOKOUT—SUFFICIENCY OF EVIDENCE.—The mere proof of an injury to a person by the operation of a train is insufficient to establish liability under the lookout statute, for there must be proof sufficient to warrant the finding that the presence of the injured party could and would have been known to the operatives of the train and the injury averted, by the keeping of the lookout, and the exercise of care after discovering his presence. (Page 358.)

3. RAILROADS—INJURY TO PERSON BY OPERATION OF TRAIN—NEGLIGENCE—CONJECTURE.—Where a person was found dead beside a railroad track and there was no evidence as to how he was killed, a peremptory instruction in favor of the defendant is proper, since it would be mere conjecture to say that deceased could have been seen and the injury averted, had a proper lookout been kept. (Page 358.)

4. EVIDENCE—CONJECTURE—PROOF.—Conjecture and speculation, however plausible, can not supply the place of proof. (Page 359.)

Appeal from Columbia Circuit Court; *George W. Hays,* Judge; affirmed.

### STATEMENT BY THE COURT.

Appellant's intestate, S. Z. Kimball, was killed by a north-bound passenger train upon appellee's railroad, at

the station of Waldo, at which place the railroad tracks run practically east and west, and the train which killed him was running east.

The last seen of deceased prior to his death was at the Skinner Hotel, about ten minutes before the arrival of the train. This hotel is situated about fifty feet north of the depot, but to reach the depot from this hotel one must go west, on a sidewalk, for about 100 or 125 feet to the street which intersects the street running north and south and crosses the railroad tracks. Deceased was expecting to meet some parties on this train, as he stated to the proprietor of the hotel just before leaving there, and he walked west down this sidewalk to the street crossing the railroad tracks. There is a sidewalk on this street crossing the railroad tracks which leads to the store of a Mr. Ficklin on the opposite side of the railroad right-of-way. Just west of the point where this sidewalk crosses the right-of-way three tracks converge, and they diverge from that point across this street toward the depot until the tracks are from five to six feet apart. It is 360 feet from this street crossing to the depot, and deceased's hat was found forty feet east of the crossing leading from the Skinner Hotel to Ficklin's store; his body was found about 200 feet east of the depot, or 520 feet from the place where his hat was found. His papers were scattered from where his body was found back to within ten or fifteen feet of where his hat was found; his hat was of felt and was lying against the passing track eight feet from the main line track. His body was lying just about where the engine usually stopped and his head was cut off eight or ten feet west of where his body was found. There were indications that his body had been dragged, and the condition of the ground between the ties indicated that he had been dragged from about where the last papers were found sixty or seventy-five feet east of the west crossing to where his body was found. This crossing passes through a cut four and one-half to five feet deep and seventy feet wide, being thirty-five feet from the center of the main track each way.

The right-of-way, both inside and outside of this cut, was perfectly open and unobstructed and the track was straight for a distance of three miles west of the depot.

All witnesses who testified as to the aspect of the track and right-of-way, including the fireman and engineer, say there was nothing to have prevented the discovery of the deceased, if he had been on the track, or on the right-of-way. The evidence showed that deceased had no business at the Skinner Hotel and was there merely to pass away the time, and it was shown that he frequented Ficklin's store on the opposite side of the track. It was Sunday, and other business houses were closed, but he had found company at Ficklin's store before he went to the hotel, and it is appellant's theory that he left the hotel with the intention of going to this store, from which place he could see the train in time to get to the depot before its arrival. What happened thereafter, until his body was found, no one knows; but appellant advances the theory and argues that the evidence supports the view, that as deceased approached the right-of-way he either saw the train headlight or heard it whistle and decided to go down the track to the depot; that it was night, and, in attempting to follow the diverging tracks from the crossing, in going toward the depot, deceased mistook the line of the north track for the middle or main track, and, while he knew the train was approaching, he thought himself on the north track and out of danger.

But it must be admitted that this is a mere matter of conjecture.

The proof upon appellee's part is that deceased had recently lost his wife and had been left with the care and responsibility of a large family, in which there were several small children, and that he was in poor health and was apparently very despondent.

Appellant contends that there is some evidence to show that deceased was struck by the pilot of the engine and that his presence could have been discovered by the

trainmen, had a lookout been kept, in time to have avoided the injury.

But the only circumstances to support this view are that the body of deceased was dragged several hundred feet from where the hat was found, and that the body was found after the train moved beyond the station lying off the south side of the railroad track, at a point about where the engine stopped. Appellant advances the theory that the body must have been dragged by the locomotive and that when the motion ceased the body dropped; that if it had been hanging from some other part of the train it would have been held during the time the train was stopped at the station and then have been released after the train started again. But, as has been said, this is mere theory or conjecture, and opposed to it is the evidence of both the engineer and firemen, who testified that they were unaware of having struck any one at Waldo until the train had arrived at McNeil or at Camden, at one of which places they received a telegram advising them that their train had killed a man at Waldo, and that immediately upon receipt of this telegram they made a careful inspection of their engine, but that they failed to find any blood or other evidence of having struck any one. The engineer and fireman both testified that they were looking ahead down the track when approaching the station from the west, and that this lookout was continued until the train made the stop at the station, and that no man got on or was on the track ahead of the engine. A number of other witnesses, who were waiting at the depot for the arrival of the train, testified that they observed the train's approach to the station and that a bright headlight was burning, which would have distinctly disclosed any object upon the track in front of the train, and that they so observed the train from a point west of the public crossing until the locomotive passed them where they stood at the station, and that if any one had been on the track, or had gotten on, they could and would have seen him, but that they did not see any one at all between them and the locomotive.

At the conclusion of the evidence the court directed the jury to return a verdict in favor of the railway company, and from the judgment rendered upon that verdict this appeal has been duly prosecuted.

*Warren & Smith* and *C. W. McKay,* for appellant.

1. Negligence may be shown by circumstantial evidence. 156 S. W. 174. The jury are not bound to accept the positive statements of employees if circumstances warrant the conclusion that they are not true. 74 Ark. 478.

2. The law of this case is well defined in 158 S. W. 139, where the court construed the lookout statute. Acts 1911, p. 275.

*S. H. West* and *Gaughan & Sifford,* for appellee.

This case is settled by 155 S. W. 512.

SMITH, J., (after stating the facts). We think the verdict was properly directed in this case. It is true that, under the lookout statute, approved May 26, 1911, it is made the duty of all persons running trains to keep a constant lookout for persons and property upon the track of any railroad, and if any person or property shall be killed or injured by the neglect of any employee of any railroad to keep such lookout, the company operating such railroad is liable and responsible for all damages resulting from the neglect to keep such lookout; and this is true, notwithstanding the contributory negligence of the person injured, where, if such lookout had been kept, the employees in charge of such train could have discovered the peril of the person injured in time to have prevented the injury, by the exercise of reasonable care after the discovery of such peril; and this act devolves upon the railway company the burden of proof to establish the fact that this duty to keep such lookout has been performed.

This act has been construed in a number of recent cases. *St. Louis, I. M. & S. Ry. Co.* v. *Gibson,* 107 Ark. 431; *Burch* v. *St. Louis, I. M. & S. Ry. Co.,* 108 Ark. 396; *Chicago, R. I. & P. Ry. Co.* v. *Gunn,* 112 Ark. 401, 166 S.

W. 568; *Chicago, R. I. & P. Ry. Co.* v. *Bryant,* 110 Ark. 444, 162 S. W. 51.

These cases construe the lookout statute to mean that "upon proof of injury to such person by the operation of its trains under such circumstances as to raise a reasonable inference that the danger might have been discovered and the injury avoided, if a lookout had been kept, that a *prima facie* case is made." But there must be some evidence, and not mere conjecture or speculation, which would reasonably warrant the inference to be drawn by the jury, that the presence of the person injured upon the track could and would have been discovered by the operatives of the train by keeping a constant lookout, and that had such lookout been kept the injury could have been averted by the exercise of reasonable care thereafter; and if the jury finds the facts so to be, a recovery of damages will not be defeated on account of the contributory negligence of the party injured. But this presumption and right to recover does not arise upon mere proof of injury; but, upon the contrary, there must be proof sufficient to warrant the finding that the presence of the party injured could and would have been known to the operatives of the train and the injury to him averted by the keeping of this lookout, and the exercise of care after discovering his presence. Here there is nothing but conjecture as to the manner in which deceased was killed by the train, and various theories are offered in explanation of that occurrence; but the only positive evidence is that the engineer and fireman were keeping a lookout as the train approached from the west, but neither of them saw the deceased nor was aware that they had struck him; and the evidence upon the part of the citizens standing at the depot that they observed the train's approach to the station and did not see any one upon the track in front of the train. Under these circumstances, it would be mere conjecture to say that deceased could have been seen, had a lookout been kept, and that the injury could have been averted by the exercise of care after discovering his presence on the track.

But conjecture and speculation, however plausible, can not be permitted to supply the place of proof. *St. Louis, I. M. & S. Ry. Co.* v. *Hempfling,* 107 Ark. 476, and cases there cited. The judgment of the court below is, therefore, affirmed.