PORTER *v.* SCULLIN *et al.,* RECEIVERS MISSOURI & NORTH
ARKANSAS RAILROAD COMPANY.

## Opinion delivered May 7, 1917.

RAILROADS—INJURY TO PERSON ON TRACK—LOOKOUT.—Plaintiff's intes-
tate was discovered dead beside a railway track. *Held,* it devolved
upon the plaintiff, in order to make out a case, to show that if the
proper lookout had been kept the presence of deceased in a perilous
position on or near the track could have been discovered in time to
have prevented the killing; and where plaintiff failed to discharge this
burden, it is proper for the court to instruct the jury to return a
verdict for the defendant.

Appeal from White Circuit Court; *J. M. Jackson,*
Judge; affirmed.

*Brundidge & Neelly,* for appellant.

1. The testimony made a *prima facie* case of in-
jury from negligence and the burden was on the com-
pany to show that the lookout statute was complied with.
The company was clearly liable. 107 Ark. 441. The
case 113 Ark. 353 is not in point. The physical facts
make out a *prima facie* case.

It was error to direct a verdict. The case should
have been submitted to the jury.

*W. B. Smith, J. Merrick Moore* and *H. M. Trieber,*
for appellee.

1. The court properly directed a verdict. Deceased
was a trespasser, and the burden was on plaintiff to
show that the employees discovered his perilous posi-
tion in time to avoid the injury and negligently failed to
do so. 107 Ark. 431-8; 97 *Id.* 560; 96 *Id.* 370; 110 *Id.*
519; 113 *Id.* 353; 117 *Id.* 483. There is no proof of the
circumstances of the injury. Under the lookout statute
the proof was not sufficient. 101 Ark. 535.

McCULLOCH, C. J. This is an action instituted by
the administratrix, for the benefit of the estate and next
of kin of the decedent, to recover damages on account of
his death, which is alleged to have been caused by the

negligence of the servants of the defendants in operating a train. It is alleged in the complaint that Tom Porter, plaintiff's intestate, "was walking upon the tracks of the defendant railway company about one mile west of the town of Heber, Cleburne County, and that while thus engaged the defendant company through its agents, servants and employees negligently and carelessly and without keeping a proper lookout for people upon its said track or right-of-way, ran the train over its said track without ringing its bell or blowing the whistle of said engine, and ran over and so badly injured and wounded the said Tom Porter that he only lived a short time after being struck by said train."

The answer of defendants contained a denial of the charge of negligence. There was a trial of the cause before a jury, but after the evidence was introduced the court directed the jury to return a verdict in favor of defendants, which was done, and judgment was rendered accordingly.

The only question for our consideration on this appeal is, therefore, whether or not the evidence adduced was legally sufficient to warrant a submission of the issues to the jury. The evidence was sufficient to show, as alleged in the complaint, that Porter was struck and killed by defendant's train about three-quarters of a mile west of Heber. No one saw him at the time he was struck by the train—the trainmen were not called as witnesses in the case—but the dead body was found near the track immediately after the train passed. The body, when found, was lying parallel with the track about eight inches from the end of the ties, lying on the right side with the back toward the ties and the legs slightly drawn up. The man was dressed in a dark blue coat and trousers. The skull was crushed, which apparently had been caused by a knock against a hard, blunt substance, and the throat was lacerated. A physician who examined the body testified that the condition of the crushed skull in-

dicated that the blow was not inflicted by a club or other instrument wielded by a man. The evidence with respect to the situation of the body and the condition it was in warrants the conclusion that the man was struck by the train and killed. The last man who saw Porter was a witness named Johnson, who testified that he saw Porter about a half hour before the train passed, and that he was last seen within about 300 yards of where the body was found. Johnson testified that Porter was very much intoxicated, was lying on the side of the dump and was vomiting, but finally got up and went staggering down the track. The witness testified that he followed Porter for some distance until the latter got across a bridge, as he was afraid a train might come and strike him, but when Porter came to a road crossing he supposed he would turn off up the road and would get home safely. Porter was living with his father about two miles from Heber, and was doubtless trying to make his way home, traveling along the railroad track at the time he was killed. According to the undisputed evidence, he was grossly intoxicated at the time and unable to take care of himself. The dead body was discovered by Mr. Carswell, the mayor of Heber, who was living on his farm a short distance from the town, and traveled along the railroad to get home. The killing occurred about dark, or just after dark—Carswell says that it was not light enough to see a man more than six or eight feet ahead. Carswell testified that he was walking along the railroad track, and while in a cut, with an embankment of about ten feet on each side part of the way, he observed the train coming from the north and climbed up the embankment and walked a short distance to allow the train to pass. As soon as the train passed he returned to the track and walked about fifty yards, when he observed the body lying in the condition described, near the track. This witness testified that there was a bright headlight on the engine, and that before he left the track the light was bright enough for him to see

whether any one was ahead on the track; that he did not see any one walking on the track, but that he could have seen a man walking on the track ahead if there had been one there. Other witnesses testified that the track was straight for nearly a mile at that place. Another witness, Stelter, testified as an expert, and stated that if the engineer or fireman had been keeping a lookout ahead of the train for persons and property on the track, and with proper headlight on the engine they "could have seen a man standing up, sitting down or lying down on the track" at the point where the body of Porter was found. The witness further stated that "if he had been on the track or anywhere near the track they ought to have seen him, if they were keeping a lookout and had a proper headlight." The witness did not state the distance, according to his opinion, the train men could have seen the man on the track ahead or the distance in which the train could have been stopped.

We are of the opinion that the evidence was insufficient to make out a case against defendants, and that the court was correct in giving a peremptory instruction to the jury. It devolved on the plaintiff, in order to make out a case, to show that if the proper lookout had been kept the presence of deceased in a perilous position on or near the track could have been discovered in time to prevent the killing. *St. L., I. M. & S. Ry. Co.* v. *Gibson,* 107 Ark. 431; *St. L., I. M. & S. Ry. Co.* v. *Zerr,* 110 Ark. 519; *Russell* v. *Railway Co.,* 113 Ark. 353; *St. L., I. M. & S. Ry. Co.* v. *Spillers,* 117 Ark. 483.

In *Russell* v. *Railway Company, supra,* we said that the "right to recover does not arise upon mere proof of injury; but, upon the contrary, there must be proof sufficient to warrant the finding that the presence of the party injured could and would have been known to the operatives of the train and the injury to him averted by the keeping of this lookout, and the exercise of care after discovering his presence."

The testimony adduced fails to show that the presence of Porter could have been discovered if a lookout had been kept. It fails to show Porter's situation and attitude at the time he was struck by the train; and also fails to show how far the trainmen in charge of the engine could have seen the man on or near the track. The only positive testimony on the subject is that of Carswell, which is uncontradicted, and it establishes the fact beyond dispute that Porter was not standing or walking on the tracks as the train approached. He was either lying down or came within range of the headlight after Carswell climbed out of the cut, which was only a few moments after the train passed. He was not in view when Carswell last looked up the track, which was when the train approached close enough to throw a strong light on the scene, and Carswell was only a distance of about fifty yards away. Stelter's testimony fails to make a case, for he merely states that a man standing, sitting or lying down on the track or near the track could have been seen if a lookout had been kept, but he does not say how far a man could be seen.

The jury would have had no right to draw the inference that the witness meant to say that a man lying down on the track or near the track, dressed as Porter was, could have been seen far enough ahead to stop the train or give a signal calculated to arouse a stupefied man and cause him to get out of the way. It is purely a matter of conjecture as to when or how Porter came in contact with the moving train. We can not discover from the evidence whether he was struck by the engine or some other part of the train.

With the burden on the plaintiff to show that the man was in such a position that his presence could have been discovered by the trainmen, we think the court was correct in holding that there was not sufficient proof to establish that fact, and that the plaintiff was not entitled to go to the jury for a decision of the issues in the case. The judgment is, therefore, affirmed.