MISSOURI PACIFIC RAILROAD COMPANY, ET AL., *v.* ROSS, ADMINISTRATOR.

4-4760

Opinion delivered October 25, 1937.

*R. E. Wiley* and *Richard M. Ryan,* for appellants.

*F. D. Goza* and *Ed F. McDonald, Jr.,* for appellee.

GRIFFIN SMITH, C. J. Appellee, as administrator of the estate of his son, Odis Ross, brought this suit in the Hot Spring Circuit Court, alleging that his intestate was killed because of the negligence of appellant.

The principal question involved is whether there was any substantial evidence to sustain the jury's verdict.

Odis Ross was last seen alive on the night of December 19, 1935. His dead body was found at eight o'clock the following morning. It was on the main line of appellant's railroad about two miles south of Donaldson, near Victor's Spur. When the body was found it was lying at the end of the ties parallel with the rails. The track was straight for a long distance in each direction and the roadbed was upon a dump six or eight feet high. There were no signs of footprints near the scene to indicate that Ross had climbed upon the track. It was customary for pedestrians to travel on a dirt road as far south as Victor's Spur, then get on the railroad. Appellant's right-of-way is fenced, and the wagon road is on the outside of the fence. There was a crossing at Victor's Spur, but it was closed with a gate.

The night of December 19-20 was cold, and the ground was frozen on the morning of the 20th. Blood, apparently penetrating the ground to a depth of three or four inches, was found by the body near the end of a crosstie. There was a hole in deceased's head, and an arm was broken. No blood was found other than that near the end of the crosstie, and there was no indication that the body had been dragged.

There is testimony that just before dark on December 19 Ross was at the home of Tom Brown half a mile north of Victor's Spur, and left, saying he was going to Jasper Collins' home, five miles away, near the railroad. He was seen on the dirt road about halfway between Brown's and Victor's Spur. Witnesses who met Ross said that he stepped out of the road to let them pass, as a normal person would have done. There was testimony that, prior to leaving Brown's house, Ross had been drinking.

Appellant's testimony was that a lookout had been maintained as to all trains passing Victor's Spur between five o'clock of the afternoon of December 19 and eight o'clock of the morning of the 20th, and that the headlights on these trains gave proper illumination.

Engineer Bryant testified that he passed Victor's Spur at 5:45 on the evening of December 19. About half-

way between Donaldson and Victor's Spur he saw a man run across the track 300 feet ahead of the engine. Witness looked out of the cab and watched the man cross, then looked down on the right side of the engine and saw a man standing in the ditch near the track. This man had a stick in his hand. Witness did not ring the bell or blow the whistle, because it was not necessary. The testimony of Fireman Kelley was substantially the same as that given by Bryant.

Appellee, for affirmance of the case, relies upon *Missouri Pacific Rd. Co.* v. *Grady*, 188 Ark. 302, 65 S. W. (2d) 539, and *Porter* v. *Scullen, et al.*, 129 Ark. 77, 195 S. W. 17.

In the Porter case it was alleged that "Plaintiff's intestate was walking upon the tracks of the defendant railway company * * * and while thus engaged the defendant company through its agents, servants and employees, negligently and carelessly and without keeping a proper lookout for people upon its said track or right-of-way, ran the train over its said track without ringing its bell or blowing the whistle of the engine, and ran over and so badly injured and wounded the said intestate that he lived only a short time after being struck by the train."

The answer was a denial of negligence. There was a trial before a jury. Trainmen were not called as witnesses. After the evidence was introduced the court directed a verdict in favor of the defendant. The only question considered on appeal was whether the evidence was legally sufficient to warrant a submission to the jury.

It is true, as appellee says in his brief, that in the opinion there is a finding that "The evidence with respect to the situation of the body and the condition it was in warrants the conclusion that the man was struck by the train and killed." This is true in the instant case, although the circumstances are not as strong here as they were in the Porter case. But Chief Justice McCulloch, in his opinion affirming the Porter judgment, said: "We are of the opinion that the evidence was insufficient to make out a case against defendants, and that the court

was correct in giving a peremptory instruction. It devolved upon the plaintiff, in order to make out a case, to show that if the proper lookout had been kept the presence of the deceased in a perilous position on or near the track could have been discovered in time to prevent the killing * * *. The testimony adduced fails to show that the presence of Porter could have been discovered if a lookout had been kept. It fails to show Porter's situation and attitude at the time he was struck by the train.''

The opinion is authority for the rule, often announced by this court, that while testimony of an eyewitness is not necessary to prove that a person or property was struck by a train, and circumstantial evidence may establish the fact, yet the finding of an injured body or damaged property in circumstances justifying a belief that such injury or damage was caused by a train, is not sufficient, alone, to fix liability. There must be evidence that if a proper lookout had been kept ''The presence of the deceased in a perilous position on or near the track could have been discovered in time to prevent the killing.''

In the Grady case the opinion contains an express finding that ''All the circumstances indicated that the man who was killed was struck while walking on the track.''

A very clear and concise discussion of the lookout statute is found in *Russell* v. *St. Louis S. W. Ry. Co.*, 113 Ark. 353, 168 S. W. 135. After citing *St. Louis, I. M. & S. Ry. Co.* v. *Gibson*, 107 Ark. 431, 155 S. W. 510; *Burch* v. *St. Louis, I. M. & S. Ry. Co.*, 108 Ark. 396, 158 S. W. 139; *Chicago, R. I. & P. Ry. Co.* v. *Gunn*, 112 Ark. 401, 166 S. W. 568; and *Chicago, R. I. & P. Ry. Co.* v. *Bryant*, 110 Ark. 444, 162 S. W. 51, the opinion says:

''These cases construe the lookout statute to mean that 'upon proof of injury to such person by the operation of its trains under such circumstances as to raise a reasonable inference that the danger might have been discovered and the injury avoided, if a lookout had been kept, that a *prima facie* case has been made.' But there

must be some evidence, and not mere conjecture or spec-ulation, which would reasonably warrant the inference to be drawn by the jury, that the presence of the person injured upon the track could and would have been dis-covered by the operatives of the train by keeping a con-stant lookout, and that had such lookout been kept the injury could have been averted by the exercise of rea-sonable care thereafter; and if the jury finds the facts so to be, a recovery of damages will not be defeated on account of the contributory negligence of the party in-jured. But this presumption and right to recovery do not arise upon mere proof of injury; but, upon the con-trary, there must be proof sufficient to warrant the finding that the presence of the party injured could and would have been known to the operatives of the train and the injury to him averted by the keeping of this lookout, and the exercise of care after discovering his presence. Here there is nothing but conjecture as to the manner in which deceased was killed by the train, and various theories are offered in explanation of that occurrence; but the only positive evidence is that the engineer and fireman were keeping a lookout as the train approached from the west, but neither of them saw the deceased nor was aware that they had struck him; and the evidence upon the part of citizens standing at the depot that they observed the train's approach to the station and did not see anyone upon the track in front of the train. Under these circumstances it would be mere conjecture to say that deceased could have been seen had a lookout been kept, and that the injury could have been averted by the exercise of care after discovering his presence on the track. But conjecture and speculation, however plausi-ble, can not be permitted to supply the place of proof. *St. Louis, I. M. & S. Ry. Co.* v. *Hempfling,* 107 Ark. 476, 156 S. W. 171, and cases there cited.''

There is no circumstance in the instant case to shed substantial light upon the principal unknown fact: That is, what position, or attitude, or condition, was Ross in when the tragedy occurred?

We are asked to say (1) that when the body was found as related by witnesses, the conclusion necessarily

followed that Ross was killed by a train; and (2) that attending circumstances were sufficient to satisfy the rule that every verdict must be sustained by some substantial evidence, either direct or circumstantial. If this be conceded, still the question remains unanswered, Upon what testimony did the jury predicate a finding that the statutory duty of care was disregarded? The track in each direction was straight for several miles. All firemen and engineers swore that lookouts were being kept. This testimony is not disputed by any of the witnesses—and headlights were sufficient. If, with the lookout being maintained, physical surroundings and attending conditions were such as to negative any explanation of the tragedy other than the supposition that Ross was walking on or near the track, then we might say the jury was justified in disregarding testimony of appellant's agents as to the measure of care, and such action would not be arbitrary. But no such case has been made out. To admit this would be to say that there is a conclusive presumption that Ross was walking on or near the track, in the glare of a brilliant headlight, and that negligence alone was responsible for the fact that his presence in such place of peril was not discovered. There is no such conclusive presumption. Such a rule would exclude every other reasonable means which might have caused the tragedy. As was said in the Russell case, "Conjecture and speculation, however, plausible, cannot be permitted to supply the place of proof." Neither may a jury capriciously disregard the reasonable testimony of witnesses in order to give substance to a fanciful theory, for in *St. Louis-S. F. R. Co.* v. *Williams,* 180 Ark. 413, 21 S. W. (2d) 611, we said: "As there was no fact or circumstance in evidence substantially contradicting the testimony of the engineer, it was an arbitrary act on the part of the jury to disregard it."

In *St. Louis-San Francisco Railway Co.* v. *Pace,* 193 Ark. 484, 101 S. W. (2d) 447, a case very similar to the one now being considered, we said:

"There was no personal testimony as to any negligence. On the contrary, appellant's servants consistent-

ly insisted that no one was on the track. The circumstances opposing these assertions is that the headlights were sufficiently powerful to have disclosed the presence of a man in time for effective application of the brakes, if he had been standing or walking.

"In order to sustain the verdict, it would be necessary to wholly disregard the testimony of appellant's servants and to hold that the mere finding of a mangled body on a track over which trains had been recently operated, coupled with the admission by appellant that it maintained efficient headlights, would establish a *prima facie* showing which could not be overcome by the reasonable testimony of men who controlled the train. The testimony of one of appellee's own witnesses that Pace was 'tipsy' shortly before leaving Bono, and the showing in physical facts that no parts of the body were between the rails, are circumstances from which it might be inferred that the unfortunate man was sitting or reclining on the outside of the rails, and that reasonable diligence upon the part of the engineer would not have disclosed his presence.

"Whatever the facts may have been as to the situation of appellee's intestate at the time he was struck, there was not sufficient evidence upon which to predicate a finding of negligence without arbitrarily disregarding testimony of witnesses in favor of a theory equally hypothetical. We conclude, therefore, that the *prima facie* showing made by appellee was overcome by the testimony of appellant's servants, which was contradicted only by inferences based upon speculation."

Under the rule in *Porter v. Scullen, et al., Russell v. St. Louis S. W. Ry. Co.,* and *St. Louis-San Francisco Ry. Co. v. Pace, supra,* and others of similar import, the judgment in the appeal now before us is reversed and the cause dismissed.

HUMPHREYS and MEHAFFY, JJ., dissent.