FARR *v.* TRADERS & GENERAL INS. Co.

5-2697                                                                  357 S. W. 2d 544

Opinion delivered May 28, 1962.

*Charles C. Wine* and *LeRoy Autrey,* for appellant.

*Shaver, Tackett & Jones,* for appellee.

ED. F. McFADDIN, Associate Justice. This litigation results from an oil well "blow in." Appellant, A. T. Farr, Jr., was drilling for oil in Lafayette County; about 9:30 p.m. on June 10, 1960, while the drill pipe was being removed, the well "blew in", erupting like a volcano and sending oil, water, and mud hundreds of feet into the air; a large crater developed; the entire rig was lost; and the semi-liquids coming from the well began to flow over surrounding land. Immediately after the "blow in" Farr employed H. R. Wootton, whose crew, working with bulldozers, was able to erect levees to minimize the damage to adjacent lands and streams.

Two days later (Sunday, June 12th) the Haliburton Oil Well Cement Company succeeded in "killing the well" and stopping the eruption. Wootton's work of clearing the land by use of bulldozers continued for approximately three weeks; and the payment of Wootton's charges of $7,325.00 is the matter of contention in this litigation.

Wootton recovered judgment against Farr for the amount claimed. Farr (appellant) then brought this action against the appellee, Traders & General Insurance Company (hereinafter called "Insurance Company") claiming that under its policy issued to Farr the Insurance Company was obligated to pay the judgment Wootton had obtained against Farr. The Insurance Company denied liability; and trial to the Court, without a jury, resulted in a finding and judgment for the Insurance Company. This appeal ensued.

The policy which the Insurance Company issued to Farr was a liability policy, and not a property damage policy. So at the outset Farr concedes, with admirable candor, that the basis of his recovery is not the coverage in the policy but rather: (a) the actions of the insurance adjusters in authorizing the Wootton work; or (b) that Farr's prompt employment of Wootton resulted in minimizing the Insurance Company's liability for damages to adjacent land-owners, and the Insurance Company would be unjustly enriched if it did not pay the Wootton judgment against Farr. We examine these contentions.

I. *The Actions Of The Insurance Adjusters.* As aforesaid, the well "blew in" at 9:30 p.m. Friday night, June 10, 1960, and within two hours thereafter Farr had Wootton and his crew building levees, minimizing the damage that the erupting well might cause. The next day after the explosion, Farr's bookkeeper notified the insurance agents who had issued the policy to Farr. Pursuant to such notification, the Insurance Company sent two independent insurance adjusters (J. C. Floyd and Carl W. Pelley) to investigate and report. Floyd and

Pelley visited the well site on Tuesday, June 14th, and discussed the matter with Farr. What was said in the conversation is a matter of dispute. Farr testified that the adjusters told him to continue the work and satisfy the property owners; but the adjusters testified that they merely congratulated Mr. Farr on his promptness, investigated the full situation, and settled with the land owners for their property damage. The adjusters denied that they had any authority to bind the Insurance Company for Wootton's work. Thus, there is a direct conflict in the testimony.

Later, and before Wootton had completed his work, he and Farr met with the insurance adjusters in Texarkana and the conversations that transpired at that meeting are likewise in dispute. Farr and his witnesses testified that the insurance adjusters agreed that the Insurance Company would pay Wootton's claim within ten days after the work was completed and a final bill was submitted. On the other hand, Pelley and Floyd testified that they definitely informed Farr and Wootton that the adjusters had no authority to authorize payment of the bill and that the adjusters would send the bill to the Insurance Company for its decision. The Assistant Vice President of the Insurance Company testified that Pelley and Floyd were independent adjusters and had no authority to authorize the Wootton work or to assume liability for Wootton's bill. Thus, there was a sharply disputed question of fact. The policy contained a provision that ". . . the company shall . . . reimburse the insured for all reasonable expenses . . . *incurred at the company's request* . . ." (Emphasis our own.) But here the adjusters denied that they requested the work by Wootton; and the Insurance Company denied that the adjusters had any authority to make such request.

The Trial Court specifically found that the Insurance Company ". . . did not request Farr to build the levee: on the other hand, Farr voluntarily called Wootton and put him on the job." In a well-worded and

comprehensive opinion, the Trial Judge reviewed the applicable law and found, from the evidence, that Farr had failed to prove the authority of the adjusters, Pelley and Floyd, to assume for the Insurance Company the charges for the Wootton work. This finding of fact by the Circuit Judge has substantial evidence to support it, and has the force and effect of a jury verdict. *Pate* v. *Fears,* 223 Ark. 365, 265 S. W. 2d 954; *Coward* v. *Barnes,* 232 Ark. 177, 334 S. W. 2d 894. We affirm the Trial Court's finding that the Insurance Company did not request the Wootton work or ratify the expenses incurred by Farr.

II. *Farr's Prompt Action As Minimizing The Damages.* The second point, relied upon by the appellant for reversal is, that the Insurance Company should pay Wootton's judgment against Farr because Farr's prompt action in employing Wootton minimized the amount of damage claims that the Insurance Company might have been required to pay. the Circuit Judge used this language as regards Farr's efforts in minimizing the damages:

"The Court is not unmindful that the quick action of Farr undoubtedly worked to the benefit of Traders & General. The damming of the flow of debris prevented considerable property damage, which damage could have involved Farr's insurance carrier. But it must be remembered that Farr's expenditure was likewise beneficial to him. First, he maintained the good will of the landowners, and, secondly, if he had stood idly by and permitted damage to vast acreage plus pollution of Bodcaw Creek, he could conceivably subject himself to damage suits far in excess of his liability coverage."

Notwithstanding the foregoing, the Circuit Judge could find no substantial evidence on which to base any recovery by Farr against the Insurance Company; and we are unable to say that the Circuit Judge was in error. By the terms of the policy, the Insurance Company agreed to pay, on behalf of Farr, "all sums which

the insured shall become legally obligated to pay as damages . . . .'' The evidence in the record before us leaves entirely to speculation just how much benefit the Insurance Company received from Farr's action in employing Wootton. Judgments cannot be based on speculation; and a study of the record fails to disclose any damage claims for which the Insurance Company might have been liable if Wootton's bulldozer work had not been performed. There is no evidence in this record that would support a court of law in deciding that the prompt action of Farr reduced the claims against him (for which the Insurance Company would have been liable) in the amount of $7,325.00, or any other amount. As aforesaid, verdicts and judgments cannot be based on speculation. ''Conjecture and speculation, however plausible, cannot be permitted to satisfy the place of proof.'' *Missouri Pacific R. R. Co.* v. *Ross,* 194 Ark. 877, 109 S. W. 2d 1246; *Glidewell* v. *Arkhola Sand & Gravel Co.,* 112 Ark. 838, 208 S. W. 2d 4.

Affirmed.

WARD and ROBINSON, JJ., dissent.