544

KANSAS CITY SOUTHERN INDUSTRIES,
INC. *v.* David STEWMAN

79-73                                                    587 S.W. 2d 12

Opinion delivered September 24, 1979
(In Banc)

*Hardin, Jesson & Dawson,* for appellant.

*James D. Emerson,* for appellee.

JOHN I. PURTLE, Justice. Appellee was awarded judgment in the Polk County Circuit Court for damages to automobiles allegedly caused by the negligence of the Kansas City Southern Railway Company. The appellant contends the court should have directed a verdict at the close of the appellee's case and, further, that the verdict is not supported by substantial evidence. Appellant's motion for a directed verdict was renewed at the close of all the evidence and again denied. The two questions to be answered by this Court are whether the court erred in refusing to grant appellant's motions for directed verdict and whether or not the verdict was supported by substantial evidence.

We find that the court did not err in refusing to grant a verdict in favor of appellant but there was error in the manner of awarding the judgment. Therefore, the case will be reversed and sent back for further proceedings.

Appellee claims his automobiles were damaged during the summer of 1977 by the agent, servants, or employees of the railway causing gravel and railroad spikes to be thrown from their track into the windshield and the bodies of three automobiles. The automobiles were situated about 75 feet from the railroad in Mena, Arkansas. At this point the track is about 25 feet higher than the lot. The automobiles, which have been described as special interest automobiles, were apparently damaged when gravel and spikes from the railroad were thrown into them. Two of the automobiles were 1939

models and one was a 1957 model. There is no dispute that the spikes and gravel were in, on and around the automobiles when inspected by the appellee in October of 1977. Neither is it disputed that the gravel was the same type as that on the nearby railroad or that the spikes were those commonly used in the maintenance and upkeep of railroads.

The evidence relating to damages is quite confusing. The automobiles apparently were not antiques but were what is termed special interest vehicles. This would tend to increase their value over automobiles which were not of special interest. During the trial evidence of the estimated cost of repairs was introduced. Also testimony from witnesses giving a value of the automobiles some two or three years prior to the accident and up to one year after the accident was presented.

At the close of the appellee's case the appellant moved for a directed verdict which was denied. Thereafter the appellant presented testimony which, in fact, showed the railroad had operated a bush hog along its tracks in that area about one month before the damages were discovered.

We first discuss the question of whether the court erred in failing to direct a verdict for the appellant. The motion was first made at the close of the appellee's testimony. The motion was overruled by the court. Thereafter the appellant presented evidence in defense of the claim. On appeal it is not important whether the court was right or wrong in refusing to grant the first motion for a directed verdict because the appellant subsequently presented evidence. If there were evidence produced by the appellant, or which grew out of the defense of the case, sufficient to support a verdict, the court was correct in overruling the motion for a directed verdict at the close of all the evidence. Such an issue was considered by this Court in the case of *Grooms v. Neff Harness Co.,* 79 Ark. 401, 96 S.W. 135 (1906). In a rehearing on the *Grooms* case this Court stated:

The defendant may, however, at the close of the plaintiff's evidence, test its legal sufficiency by a request for a peremptory instruction in his favor. If, after a denial of

the request, he introduces evidence which, together with that introduced by the plaintiff, is legally sufficient to sustain the verdict, he waives the error of the court in refusing to give the instruction.

To the same effect see *Granite Mountain Rest Home* v. *Schwarz,* 236 Ark. 46, 364 S.W. 2d 306 (1963).

The appellant introduced evidence showing it had operated a bush hogging machine in the area shortly before the damages were discovered by the appellee. Facts introduced by the appellee indicated the vehicles were damaged by spikes and gravel from the railroad. These facts, and other evidence, are sufficient to support a verdict even though the facts were all circumstantial. It is not necessary to have direct evidence in order to support a verdict.

We have on numerous occasions held that a well-connected train of circumstances is as valuable to the jury in reaching a verdict as that of direct evidence. We have even stated that such circumstantial evidence sometimes outweighs opposing direct testimony and any issue of fact may be established by circumstantial evidence when the circumstances are such that reasonable minds might draw different conclusions. *Woodward* v. *Blythe,* 246 Ark. 791, 439 S.W. 2d 919 (1969). We have also held, in determining the legal sufficiency of evidence, the testimony of a party to an action who is interested in the result will not be regarded as undisputed. *Bridges* v. *Shapleigh Hardware Co.,* 186 Ark. 993, 57 S.W. 2d 405 (1933). We view the evidence on appeal in the light most favorable to the appellee and under the circumstances we cannot say as a matter of law that the evidence in this case is insufficient to support a verdict.

The measure of damages used by the court presents a different situation. The trial court, sitting as a jury, was obviously aware of the correct measure of damages and stated it to be the value of the vehicles immediately before the loss, less the value of the vehicles immediately after the loss. However, in reaching a decision on the amount of damages, the court failed to abide by this rule. We are not sure as to the exact method used by the court in reaching the verdict on damages.

However, there was evidence concerning the value of the automobiles two or three years prior to the accident and their value a year after the accident. Also, there was evidence of the cost of repairs. At one point the court sustained the objection of the value prior to the accident because of remoteness in time. However, in reaching a decision it appears this testimony was actually considered. We do not find anywhere in the testimony evidence of the value of the vehicles immediately before and immediately after the accident.

Ark. Stat. Ann. § 75-919.1 (Supp. 1977) provides that in all cases involving damages to motor vehicles the measure of damage shall be the difference between the value of the vehicle immediately before the damage occurred and after the damage occurred, plus a reasonable amount of damage for loss of use of such vehicle. We have reaffirmed this measure of damages in cases too numerous to mention. We have no alternative but to reverse the case on the measure of damages.

Reversed and remanded for a new trial on all issues.

HARRIS, C.J., and FOGLEMAN and HICKMAN, JJ., concur in part and dissent in part.

JOHN A. FOGLEMAN, Justice, concurring in part; dissenting in part. I agree with the disposition of this case and the basis of the majority's reversal. I would go further, however, and hold that the trial court erred in failing to grant appellant's motion for a directed verdict at the close of all the evidence. I strongly feel that the finding that appellant was guilty of negligence which was a proximate cause of appellee's damage is based upon nothing but speculation and conjecture.

The evidence, viewed in the light most favorable to appellee shows:

The lot on which Stewman stores his antique and special interest cars is behind a building in which Stewman stores his personal cars. Stewman operates an antique car parts business at this location, which he shares with a heating and air conditioning business. In June,

July and September, he had four or five cars stored on this lot, which was adjacent to the right-of-way of the Kansas City Southern railroad. The right-of-way is about 25 feet higher than the lot. He discovered the damage to his automobiles on the lot at some indefinite time. The damage could have occurred as long as six months prior to his discovery of it. Repair estimates were made and photographs of the automobiles taken in October, 1977. There were fresh cuts in the spike when Stewman first examined it. People walk down this section of the railroad. Children have played along this section of track on rare occasions. The right-of-way of the railroad is cleared by use of a brush cutter, which may be used in the vicinity of appellee's lot once a year.

Richard Turman, appellant's roadmaster, who patrols and inspects the tracks between Mena and DeQueen met with Stewman in September or October, 1977, having received information that Stewman wanted to talk to him about some damage at Stewman's place of business. Stewman expressed the opinion that the railroad's brush cutter caused the damage. Operators of the brush hog are instructed to raise their blade when passing along the right-of-way through town high enough to avoid its hitting anything. The brush hog machine was in the area on the last day of August and the first day of September, 1977. It passed through Mena on September 1. If the blade of the brush hog had hit the spike, it probably would have cut the spike in two. None of the spikes except the one imbedded in the windshield of the automobile bore any marks whatever. Two years earlier, the blade of this machine had struck a keg of new spikes, which had been placed near a switch for repair of the track, where there had been a derailment. Spikes were thrown with such velocity that they went through the side of a nearby van. The spike which struck the windshield of appellant's car did not even go through the windshield. There was no pile of spikes on the right-of-way when Turman examined it. There was no way for the machine to throw a whole pile of spikes at once, without leaving some of them.

Conjecture and speculation, however plausible, cannot supply the place of proof. *Russell* v. *St. Louis Southwestern Ry. Co.,* 113 Ark. 353, 168 S.W. 135; *Farr* v. *Traders & General Ins. Co.,* 235 Ark. 185, 357 S.W. 2d 544. An inference cannot be based upon evidence which merely raises a conjecture or possibility. *Glidewell* v. *Arkhola Sand & Gravel Co.,* 212 Ark. 838, 208 S.W. 2d 4.

Furthermore, there was positive testimony by the operator of appellant's brush cutter that he did not strike anything unusual when he came through Mena in September, 1977, and that whenever the blades strike anything unusual he can hear the sound from the blow. There was nothing to indicate that this testimony was so unreasonable as to be untrustworthy. The fact finder cannot capriciously disregard the reasonable testimony of a witness in order to give substance to a fanciful theory even though the witness may be an employee of a party to the action. *Russell* v. *St. Louis Southwestern Ry. Co.,* supra; *Missouri Pac. Rd. Co.* v. *Ross,* 194 Ark. 877, 109 S.W. 2d 1246; *St. Louis-San Francisco Ry. Co.* v. *Williams,* 180 Ark. 413, 21 S.W. 2d 611.

The evidence may have been sufficient to give rise to a suspicion, perhaps a strong one, that the damage to appellees' property was caused by negligence in the operation of the brush cutter, but no more. To have been substantial, the circumstantial evidence must force or induce the mind to pass beyond suspicion or conjecture. *Pickens-Bond Const. Co.* v. *Case,* 266 Ark. 323, 584 S.W. 2d 21.

I am authorized to state that the Chief Justice and Mr. Justice Hickman join in this opinion.