BILL FITTS AUTO SALES, INC. *v.* Carrie A. DANIELS

95-1100 922 S.W.2d 718

Supreme Court of Arkansas
Opinion delivered June 10, 1996

*Diana M. Maulding*, for appellant.

*Central Arkansas Legal Services*, by: *Kenneth E. Baker* and *Griffin J. Stockley*, for appellee.

ANDREE LAYTON ROAF, Justice. Appellant, Bill Fitts Auto Sales, Inc. ("Fitts"), appeals from a judgment awarding appellee Carrie Daniels a surplus resulting from the repossession and resale of a car which she had purchased from Fitts under a security agreement. Fitts contends that the trial court erred in (1) interpreting Ark. Code Ann. § 4-9-504 to require payment of a surplus to Daniels; (2) not allowing credit for expenses incurred by Fitts in a subsequent repossession of the car from the person to whom it had been resold; (3) not finding that Daniels had waived any right to surplus in the contract she signed for purchase of the car; and (4) denying Fitts' motion to dismiss for lack of sufficient evidence to award judgment. We find no error, and affirm.

Fitts sold a 1992 Mitsubishi Galant to Daniels for $10,500, on February 22, 1993. Daniels made a down payment of $6,500 and financed the remainder at 24 payments of $180.95 each. After Daniels missed a few payments, Fitts repossessed the car on December 1, 1993. Fitts paid off the recourse debt of $2941.81 and incurred the following expenses in connection with the repossession: $300 repossession fee, $300 discount fee, $251.11 commission, $327.45 get ready fee, $100 detail fee and a $100 lot fee.

Fitts then resold the automobile to Joyce Harris on January 3, 1994, for $8950. Harris paid a $1500 down payment but never made any further payments, and the car was again repossessed within a month. Fitts incurred costs attributable to Harris' repossession and paid off Harris's recourse debt of $6997.34.

Daniels filed suit seeking the surplus from the resale of the car to Harris. Daniels sought the difference between the $8950 resale price to Harris, and the $2941.81 Daniels owed when the car was repossessed from her, pursuant to Ark. Code Ann. § 4-9-504(2) (Repl. 1991).

After a non-jury trial, the trial court entered judgment against Fitts. The trial court determined the difference between the resale to Harris and the debt Daniels owed on the car to be $6008.19 ($8950 minus $2941.81) and allowed Fitts only the expenses of $1378.56 incurred in the repossession from Daniels, in awarding judgment in favor of Daniels for $4629.63. From that determination comes this appeal.

Fitts first argues that the trial court erred in interpreting the following provision contained in Ark. Code Ann. § 4-9-504(2)(Repl. 1991):

(2) If the security interest secures an indebtedness, *the secured party must account to the debtor for any surplus*, and, unless otherwise agreed, the debtor is liable for any deficiency. But if the underlying transaction was a sale of accounts or chattel paper, the debtor is entitled to any surplus or is liable for any deficiency only if the security agreement so provides. [emphasis added].

Fitts contends that the word "account" does not mean "pay" and requires only that a post-disposition statement of charges and credits be submitted to the debtor and that this was done.

Arkansas Code Annotated § 4-9-504 deals with a secured party's right to dispose of collateral after default. Section 4-9-504(1) provides that a secured party after default may sell the collateral, and that the proceeds of the disposition shall be applied, first, to the reasonable expenses of retaking, holding, and preparing the collateral for sale, next to the satisfaction of the indebtedness under which the disposition is made, and third to the satisfaction of indebtedness secured by any subordinate security interest in the collateral. We must thus determine what is required of a secured party, such as Fitts, if there are funds remaining from the proceeds of disposition of the collateral after payment of the credits allowed in § 4-9-504(1).

■ The first rule in considering the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Henson* v. *Fleet Mortgage Co.*, 319 Ark. 491, 892 S.W.2d 250 (1995). However, we are not limited to the dictionary definition of a term, as Fitts would suggest. The basic rule of statutory construction to which all other interpretive guides defer is to give effect to the intent of the legislature. *McCoy* v. *Walker*, 317 Ark. 86, 876 S.W.2d 252 (1994). In interpreting a statute and attempting to construe legislative intent, the appellate court looks to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, legislative history, and other appropriate means that throw light on the subject. *Id.*

■ We first note that section 4-9-504(2) further provides that a debtor is *not entitled* to any surplus from the sale of accounts or chattel paper unless the security agreement so provides. This is surely strong, if not conclusive, indication that a debtor is entitled to the surplus from the sale of other collateral. Moreover, the proper procedure for post-sale accounting pursuant to U.C.C. § 9-504 (2) has been described as follows:

> When a duty to account exists, the proceeds of the foreclosure sale of the collateral are to be applied to: (a) liquidation expenses, (b) payment of debt, (c) subordinate security interests, (d) *payment of remaining surplus*.

9A Ronald A. Anderson, *Anderson on the Uniform Commercial Code*, § 9-504. (3d ed. 1994) (emphasis added). *Anderson* further provides that once the creditor has obtained satisfaction of his or her debt by

the disposition of the collateral, the creditor cannot recover more than the deficiency from the debtor. The trial court thus correctly determined that the requirement to account for any surplus included the payment of the surplus to Daniels.

Fitts next contends that the trial court erred in not considering and crediting Fitts with the expenses of the Harris repossession.

Arkansas Code Annotated § 4-9-504(1)(a) provides that reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing, and the like shall be deducted from the proceeds of the disposition of the collateral. Section 4-9-504(3) further provides that:

> (3) Disposition of the collateral may be by public or private proceedings and may be made by *way of one or more contracts*. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms, but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable.

Ark. Code Ann. § 4-9-504(3) (Repl. 1991) (emphasis added). Fitts argues that the expenses incurred after the sale to Joyce Harris should be deducted from the proceeds of the sale to her because collateral may be disposed of by way of "one or more contracts," and it took more than one contract to effectively dispose of the collateral.

According to Fitts, the Harris repossession costs include a $500 "quick note" that was not collected, $300 repossession fee, $1,254.87 commission, $521.25 dealer discount, and a $367.45 get ready fee along with a payoff of Harris's debt of $6997.34. Fitts argues that the transaction with Harris was but another expense on the continuum that started when the car was repossessed from Daniels and the Harris expenses should be counted as reasonable expenses under Ark. Code Ann. § 4-9-504(1)(a). Fitts asserts that "disposition" should be construed as a final parting with the collateral by the secured creditor. This argument is also without merit.

According to *Anderson, supra,* not every transfer of collateral by a secured party is a disposition for the purposes of the section in question. However, after a creditor has repossessed the collateral, a delivery of it to a third person "with the expectation that such person will ultimately pay the balance due" is a "disposi-

tion" within U.C.C. § 9-504 of which notice of sale must be given, even though no title is transferred to such third person at the time of delivery. 9A Ronald A. Anderson, *Anderson on the Uniform Commercial Code* § 9-504 (3d ed. 1994); *First City Bank-Farmers Branch, Tex.* v. *Guex*, 677 S.W.2d 25 (Tex. 1984).

■ The provision for disposition of the collateral by way of one or more contracts clearly pertains to collateral involving more than one unit. To accept Fitts's construction of the statute would result in a defaulting debtor being liable for any subsequent buyer's default until that buyer's contract was fully paid. Clearly, the car was delivered by Fitts to Harris with the expectation that she would ultimately pay the balance due; the collateral was thus disposed of pursuant to § 4-9-504.

Fitts contends that the trial court erred when it did not find that Daniels waived the right to any surplus when she signed the contract for the purchase of the vehicle. The contract between Daniels and Fitts contained the following clause:

REPOSSESSION

You can repossess the property if I default. I'll turn it over to you upon request. You may enter my property to get the property so long as you do it peacefully. You have the right to sell the property to cover my obligations and I'll also pay for your costs of retaking it, holding it, preparing it for sale [sic] and the like. If the sale doesn't cover all that I owe, I'll still be responsible for the difference. But I can still recover the property before you sell it by paying any amount due and any charges you are entitled to.

Fitts argues that Daniels is bound by the contract and that the contract does not provide that she get any surplus. This argument is also without merit.

Arkansas Code Annotated § 4-9-501 provides:

(3) To the extent that they give rights to the debtor and impose duties on the secured party, the rules stated in the subsections referred to below *may not be waived or varied* except as provided *with respect to compulsory disposition of collateral* (4-9-504, and 4-9-505), and with respect to redemption of collateral (4-9-506), but the parties may by agreement determine the standards by which the fulfillment of these

rights and duties is to be measured if such standards are not manifestly unreasonable:

(a) Section 4-9-502(2) and 4-9-504(2) *insofar as they require accounting for surplus proceeds of collateral*[.]

(Emphasis added.) The debtor's rights to a surplus from the disposition of the collateral cannot be waived even by an express agreement. 68A Am. Jur. 2d *Secured Transactions* § 693 (1993).

■ Fitts's contract with Daniels was silent regarding the possibility of a surplus. However, Daniels's right to a surplus granted by Ark. Code Ann. § 4-9-504(2), cannot be waived even by an express agreement to do so.

Fitts finally contends that there was insufficient evidence for the court to grant judgment to Daniels. He argues that Daniels failed to prove her case and, therefore, it was error not to grant Fitts's motion to dismiss.

Fitts argues, in essence, that the trial court erred when it denied the motion to dismiss because there was no sufficient evidence in the record, placed there by Daniels, because Daniels could not testify to the precise amount of the debt owed by her or the expenses incurred by Fitts with the repossession and resale, even though she had obtained this information in discovery. Daniels's testimony, as well as the contract itself, provided evidence that Daniels paid $6,500 down on a $10,500 automobile. Yvonne Fitts, wife of Bill Fitts, was called as a witness by Daniels and confirmed without objection, that there was $2,941 owing on the automobile. She also testified on direct examination, again without objection, to the costs incurred in the repossession from Daniels.

■ Furthermore, Fitts waived his claim of error because, after Daniels rested her case and Fitts's motion to dismiss was denied, he went forward with his proof. Both Fitts and his wife testified again, providing the amount of the payoff for Daniels's loan and the costs incurred in repossessing the car from Daniels during their testimony. If, after the denial of a request for a directed verdict or a dismissal, a defendant introduces evidence which, together with that introduced by the plaintiff, is legally sufficient to sustain a verdict, he waives his claim of error by the court in refusing to direct a verdict, or dismiss, at the close of the plaintiff's case. *Shamlin v. Shuffield & Garot*, 302 Ark. 164, 787 S.W.2d 687 (1990); *Higgins*

v. *Hines*, 289 Ark. 281, 711 S.W.2d 783 (1986); *Kansas City Southern Ind., Inc.* v. *Stewman*, 266 Ark. 544, 587 S.W.2d 12 (1979).

■ There was clearly sufficient evidence upon which the trial court could base its judgment, without having to resort to conjecture or speculation. *See Aronson* v. *Harriman*, 321 Ark. 359, 901 S.W.2d 832 (1995).

Affirmed.

GLAZE, J., concurs; DUDLEY, J., not participating.