LAWHON FARM SERVICES, et al. *v.* James R. BROWN

97-1564                                    984 S.W.2d 1

Supreme Court of Arkansas
Opinion delivered December 3, 1998

*Friday, Eldredge & Clark,* by: *Betty J. Demory,* for appellants.

*Teresa A. French,* for appellee.

DAVID NEWBERN, Justice. James R. Brown died from an injury suffered while in the employ of Lawhon Farm Services. Pursuant to Ark. Code Ann. § 11-9-527 (Repl. 1996), an Administrative Law Judge awarded workers'-compensation death benefits to his three children. The Workers' Compensation Commission affirmed the award as did the Arkansas Court of Appeals. Lawhon Farm Services and its insurer, AG-COMP SIF Self-Insured Fund, to which we shall refer collectively as "Lawhon," appeal. Lawhon contends that strict construction of the workers' compensation statutes, as required by Act 796 of 1993, compels a holding that the children were not "wholly and actually dependent" on Mr. Brown at the time of the injury, and that they are not entitled to dependents' benefits. Our conclusion is that our previous interpretations of the statutory language in question remain controlling as the words of the statute have not been changed by Act 796; thus we affirm. Although this case comes to us upon review from the Court of Appeals, we treat it as an appeal to us of the decision of the Commission. *See Olsten Kimberly Quality Care v. Pettey,* 328 Ark. 381, 944 S.W.2d 381 (1997); *Stucco Plus, Inc. v. Rose,* 327 Ark. 314, 938 S.W.2d 556 (1997).

James R. and Lucinda Brown were married for twelve years and had two children together, Melva Sue (Susie) Brown, born June 19, 1979, and Angela Marie (Angie) Brown, born February 23, 1981. Mrs. Brown's child from a previous marriage, Jamie Lee, was adopted by Mr. Brown. The Browns separated in July 1992 and were divorced in January 1993. Mr. Brown was awarded custody of Susie and Angie, and Mrs. Brown was awarded custody of Jamie Lee. Neither party was ordered to pay child support. Mrs. Brown later married David H. Penick.

Mr. Brown died in June of 1994. Mrs. Penick claimed death benefits for the children in accordance with § 11-9-527. Lawhon denied the claim. At a hearing before the Administrative Law Judge, the parties stipulated that Mr. Brown died while in the course and scope of his employment with Lawhon. They also stipulated that Mr. Brown was the father of Jamie Lee, Susie, and Angie.

Lawhon appeals on the basis that the Commission erred in interpreting § 11-9-527 in light of the "dramatic changes" made to the workers' compensation law by Act 796. Lawhon contends that our case law dealing with dependents' benefits is now in conflict with § 11-9-527 and should not be applied to cases arising after July 1, 1993, the effective date of Act 796. Additionally, Lawhon contends that the evidence presented was insufficient to support the award.

The Commission made these findings of fact. Susie and Angie lived with Mr. Brown from January 1993 until the fall of 1993. Mr. Brown totally supported Susie and Angie when they lived with him. During that time, Mr. Brown also bought clothes and school supplies for Jamie Lee when she needed them and gave her money occasionally. When the children were visiting with Mrs. Penick, Mr. Brown sometimes gave money to Susie for their return trip to Mrs. Penick's house in McGehee. During visitation of Susie and Angie with Mrs. Penick, Mr. Brown bought groceries for them and allowed Mrs. Penick to use some of his furniture.

Mr. Brown asked Mrs. Penick, who resided in McGehee, if she would send the children to school there in the fall of 1993. She agreed, and Mr. Brown took them shopping for school sup-

plies and clothes. Although the children were all living with Mrs. Penick, the original custody order remained unaltered. Mr. Brown took Susie back to his residence in McCrory in August 1993 after Mrs. Penick had requested help because Susie refused to attend school in McGehee. Mr. Brown continued to help Mrs. Penick with expenses for Angie and Jamie Lee when Mrs. Penick asked for it, and he gave Angie some money directly.

In January 1994, Mr. Brown returned Susie to Mrs. Penick, because he couldn't "do anything with her." He then bought groceries for the family, and bought the children a stereo and a Nintendo set. He also gave them money, and bought their school supplies. Susie continued to refuse to go to school, and Mrs. Penick filed a family-in-need-of-services petition. The petition was denied. Mrs. Penick consulted an attorney to petition for a change of legal custody and an order of child support, but she was unable to afford to proceed in chancery court. She also sought help from a Child Support Enforcement Unit to obtain a support order, but she was unable to do so prior to Mr. Brown's death.

### 1. Statutory construction

Section 11-9-527 provides death benefits for dependents of workers who die in work-related accidents. It states, in pertinent part:

> (c) BENEFICIARIES — AMOUNTS. Subject to the limitations as set out in §§ 11-9-501—11-9-506, compensation for the death of an employee shall be paid to those persons who were wholly and actually dependent upon the deceased employee in the following percentage of the average weekly wage of the employee and in the following order of preference:
>
> (1)(A)(i) To the widow if there is no child, thirty-five percent (35%), and the compensation shall be paid until her death or remarriage.
>
> (ii) However, the widow shall establish, in fact, some dependency upon the deceased employee before she will be entitled to benefits as provided in this section;

(B)(i) To the widower if there is not child, thirty-five percent (35%) and the compensation shall be paid until his death or remarriage.

(ii) However, the widower shall establish, in fact, some dependency upon the deceased employee before he will be entitled to benefits as provided in this section;

\* \* \* \*

(3)(A) To one (1) child if there is no widow or widower, fifty percent (50%).

(B) If more than one (1) child, and there is no widow or widower, fifteen percent (15%) for each child, and in addition thereto, thirty-five percent (35%) to the children as a class, to be divided equally among them;

\* \* \* \*

(h) DETERMINATION OF DEPENDENCY. All questions of dependency shall be determined as of the time of the injury.

(i) PARTIAL DEPENDENCY. (1) If the employee leaves dependents who are only partially dependent upon his earnings for support at the time of injury, the compensation payable for partial dependency shall be in the proportion that the partial dependency bears to total dependency.

Although reference was made during oral argument of this case to subsection (i)(1) and the thought that the "partial dependency" provision might apply, no such argument was made to the Commission. The issue before the Commission and in this appeal remains solely whether the children were "wholly and actually" dependent upon Mr. Brown in accordance with § 11-9-527(c).

Lawhon relies on Ark. Code Ann. § 11-9-1001 (Repl. 1996), which is that part of Act 796, entitled "Legislative Declaration," which provides in part that "it is the specific intent of the Seventy-Ninth General Assembly to repeal, annul, and hold for naught all prior opinions or decisions of any administrative law judge, the Workers' Compensation Commission, or courts of this state contrary to or in conflict with any provision in this act." Also cited is the change in Ark. Code Ann. § 11-9-704(c)(3)

(Repl. 1996), which states that the "Administrative Law Judge, the Commission, and any reviewing courts shall construe the provisions of this chapter strictly."

Lawhon urges that these changes have been recognized in recent case law, such as *City of Blytheville v. McCormick*, 56 Ark. App. 149, 939 S.W.2d 855 (1997), in which the Court of Appeals indicated that it would be wrong to rely on former law or its construction to determine the meaning of "wholly and actually dependent." In that case, a firefighter had a second heart attack on the job, and the Commission determined that it was a work-related "accident." The City argued that, because Act 796 changed the former practice of liberal construction and required that the provisions of the Act be construed strictly, the definition of "accident" that was the product of liberal statutory construction should no longer be applied. The Court of Appeals recognized that Act 796 called for strict construction but stated that it was not relying on the former law or its construction in determining the meaning of "accident." Instead, the Court relied on the rules of statutory construction, one of which is to place the word "accident" as used in that section next to other relevant statutory provisions to give it a meaning and effect derived from the whole. Section 11-9-102(5)(A)(i) defined the word "accident" as an event "caused by a specific incident and identifiable by time and place of occurrence." That construction of the word in conjunction with the evidence presented about the event required affirmance.

Just as the City of Blytheville argued in the cited case, Lawhon urges that we reverse the Commission because it relied on the definition given "wholly and actually dependent" by cases decided prior to Act 796. The earlier law fostered liberal interpretation due to the remedial purposes of the legislation. *See* Ark. Code Ann. § 11-9-704(c)(3) (1987). Lawhon argues that our prior construction conflicts with the strict construction required by § 11-9-704(c)(3) and that the General Assembly, in § 11-9-1001, expressly overruled all of our liberal interpretation cases.

We construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Vanderpool v. Fidelity & Casualty Ins. Co.*, 327 Ark. 407, 415, 939

S.W.2d 280 (1997); *Bill Fitts Auto Sales, Inc. v. Daniels*, 325 Ark. 51, 55, 922 S.W.2d 718, 720 (1996). The basic rule of statutory construction to which all other interpretive guides defer is to give effect to the intent of the General Assembly. *Id.* As a guide in ascertaining legislative intent, we often examine statutory history as well as conditions contemporaneous with the time of the enactment, the consequences of interpretation, and all other matters of common knowledge within the court's, and in this case the Commission's, jurisdiction. *Citizens to Establish a Reform Party v. Priest*, 325 Ark. 257, 261, 926 S.W.2d 432, 435 (1996). In construing any statute, we place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect to be derived from the whole. *Hercules, Inc. v. Pledger*, 319 Ark. 702, 706, 894 S.W.2d 576, 578 (1995).

Strict construction means narrow construction. *Arkansas Conf. Seventh Day Adventists v. Benton Cty. Bd. of Equalization*, 304 Ark. 95, 800 S.W.2d 426 (1990). In *Thomas v. State*, 315 Ark. 79, 864 S.W.2d 835 (1993), we wrote that strict construction requires that nothing be taken as intended that is not clearly expressed. The doctrine of strict construction is to use the plain meaning of the language employed. *Holaday v. Fraker*, 323 Ark. 522, 915 S.W.2d 280 (1996). Even when statutes are to be strictly construed, however, they must be construed in their entirety, harmonizing each subsection where possible. *Min-Ark Pallet Co. v. Lindsey*, 58 Ark. App. 309, 950 S.W.2d 468 (1997).

Citing *Webster's New International Dictionary*, (2nd ed. unabridged), Lawhon would have us define "wholly" as "in entirety; fully; . . . to the whole extent; totally; entirely; completely; thoroughly;" and "to the exclusion of other things, solely." "Actually" is defined as "actively" or "in act or in fact; reality; also at the present moment." *Id.* Lawhon's view of a strict construction of this section would require the children to prove that at the time of their father's death they were entirely or completely dependent upon him for support. It is urged that the language in subsection (d)(2), which states that "benefits to an otherwise eligible child shall not terminate with the attainment of age eighteen (18) . . . ," would not have been included if the General Assembly had intended that all children be eligible for dependents' benefits.

Lawhon argues that, if the language of the statute is too harsh and should be revised to allow children of deceased claimants to receive dependents' benefits as a matter of law or without a showing they are actually and wholly dependent or have a reasonable expectation of support, then it is the responsibility of the General Assembly, and not that of a court, to make the revision.

■ ■ The history of § 11-9-527 and the record of our interpretation of it are helpful. Originally, the term "wholly dependent" was construed to refer to those ordinarily recognized in law as dependents. A conclusive presumption thus arose to the effect that a wife or child of a deceased employee who was killed in the course and scope of his employment was a dependent for purposes of the statute. *See Chicago Mill & Timber Co. v. Smith*, 228 Ark. 876, 310 S.W.2d 803 (1958). In 1976, the General Assembly amended § 11-9-527 to provide that a widow or widower shall establish "actual" dependency before she or he will be entitled to benefits. We interpreted that change as eliminating the conclusive presumption and requiring a widow to establish facts showing dependency upon the decedent before being entitled to benefits. *Roach Mfg. Co. v. Cole*, 265 Ark. 908, 582 S.W.2d 268 (1979). We held that dependency was to be determined in light of the surrounding circumstances, citing *Smith v. Farm Service Coop.*, 244 Ark. 119, 424 S.W.2d 147 (1968), and in light of prior events and not controlled by an unusual, temporary situation, citing *Nolen v. Wortz Biscuit Co.*, 210 Ark. 446, 196 S.W.2d 899 (1946).

■ While the widow in the *Roach Mfg. Co.* case failed to show that she was actually dependent on the decedent, her child was held to be actually dependent. We quoted from Professor Larson's treatise: "Proof of bare legal obligation to support, unaccompanied by either actual support or reasonable expectation of support, is ordinarily not enough to satisfy the requirement of actual dependency." LARSON, WORKMEN'S COMPENSATION LAW § 63 (1976). Because the widow had not attempted to obtain support for herself, she was unable to meet the requirement, but we held that the child, unable to act for herself, was not bound by the ruling with respect to the widow and was dependent, as she had a reasonable expectation of support from the deceased worker.

The Commission ruled that all three children in this case were "wholly dependent" upon Mr. Brown in accordance with the interpretation of that term in *Chicago Mill & Lumber Co. v. Smith, supra*. The requirement of "actual dependency," added to the statute in 1979, as interpreted in *Roach Mfg. Co. v. Cole, supra*, was met as well. The Commission ruled that the children had a "reasonable expectancy of future support" and were "wholly and actually" dependent on Mr. Brown at the time of his work-related death.

■ ■ The General Assembly is presumed to be familiar with this Court's interpretations of its statutes, and if it disagrees it can amend the statutes. An example occurred when the word "actually" was added to the provisions of § 11-9-527 applying to widows and widowers subsequent to our decision in the *Chicago Mill & Timber* case. Without such amendments, however, our interpretations of the statutes remain the law. *Sawyer v. State*, 327 Ark. 421, 938 S.W.2d 843 (1997). Although aware of our interpretation, the General Assembly made no change to § 11-9-527(c) in the 1993 amendments. Nor do we agree that § 11-9-1001 has annulled our decisions interpreting the statute. Section 11-9-1001 purports to annul decisions that are inconsistent with Act 796. We do not regard our prior decisions as being inconsistent with Act 796 as they are interpretations of § 11-9-527 that remain unchanged by that Act. Interpretation of statutes is the proper function of this Court.

■ Applying the dictionary definitions urged by Lawhon would mean that a minor child would never be entitled to the death benefits specified in § 11-9-527(c)(3) where the parents were divorced and the child received any support whatever from the surviving parent. That would be an absurd result, and we will not adopt such an interpretation. *Citizens to Establish a Reform Party v. Priest*, 325 Ark. 257, 926 S.W.2d 432 (1996); *Henson v. Fleet Mortgage Co.*, 319 Ark. 491, 892 S.W.2d 250 (1995). We are confident our General Assembly could not have intended the result suggested by Lawhon.

## 2. Sufficiency of the evidence

The Workers' Compensation Commission found specifically that Mr. Brown was actually supporting his children prior to his death. While it was not in the form of child-support payments, he was contributing to their welfare by spending money for their support. Mr. Brown was the legal custodian of two of the children, and no doubt he would have been found to have had an obligation to support them as well as the child of whom Mrs. Penick had legal custody if the matter had arisen in a support proceeding.

██ ██ Lawhon's argument that the evidence is insufficient to support the Commission's decision is inextricable from its argument that our *Roach* decision has been overruled and that we therefore should not consider whether the evidence was sufficient to show a reasonable expectation of support as satisfying the "wholly and actually" language. Having dealt with that issue above, we need only say here that, in determining the sufficiency of the evidence to sustain the findings of the Workers' Compensation Commission, we review the evidence in the light most favorable to the Commission's findings and affirm if they are supported by substantial evidence. *Golden v. Westark Community College*, 333 Ark. 41, 969 S.W.2d 154 (1998); *Gansky v. Hi-Tech Engineering*, 325 Ark. 163, 924 S.W.2d 790 (1996). Our conclusion is that the evidence supporting the Commission's decision, *i.e.*, that the children had a reasonable expectation of support from Mr. Brown, is substantial.

Affirmed.

CORBIN, J., not participating.