The Honorable Janice A. Judy State Representative 202 West Maple Street Fayetteville, AR 72701-4132
Dear Representative Judy:
You have requested an Attorney General opinion concerning Act 1209 of 2001.
Act 1209 of 2001 (in addition to having other effects) amended A.C.A. §5-64-1101 to declare the possession of more than five grams of ephedrine and more than nine grams of pseudoephedrine or phenylpropanolamine to be a Class D felony. The Act lists several persons and transactions that are exempt from this provision, including any manufacturer, wholesaler, or distributor who is licensed by the State Board of Pharmacy and who sells, transfers, or otherwise furnishes these drugs, their salts, optical isomers, and salts of optical isomers to a licensed pharmacy, physician, dentist, podiatrist, veterinarian or any person who possesses a sales and use tax permit issued by the Department of Finance and Administration.
You explain that ephedrine, its salts, its optical isomers or salts of optical isomers, as the sole active ingredient or in combination with therapeutically insignificant quantities of another active, medicinal ingredient or ingredients, is a Class V Controlled substance. In combination with therapeutically significant quantities of another active, medicinal ingredient or ingredients, however, it is a non-controlled substance and does not require a prescription. Pseudoephedrine and phenylpropanolamine are non-legend drugs that do not require a prescription.
You have asked:
 (1) Does the Pharmacy Board have the authority to license manufacturers, wholesalers, and distributors of ephedrine in a non-prescription form, pseudoephedrine, or phenylpropanolamine, pursuant to A.C.A. § 20-64-501 et seq. (which authorizes the Board to license manufacturers and wholesale distributors of prescription drugs)?
 (2) If not, does the Board have the authority, pursuant to Act 1209, to license and to collect licensing fees from manufacturers, wholesalers, and distributors of these non-prescription drugs, independent of A.C.A. § 20-64-501 et seq.?
 (3) If not, does Act 1209 require that these non-prescription drugs be distributed by manufacturers, wholesalers or distributors who are licensed by the Pharmacy Board pursuant to A.C.A. § 20-64-501 et seq.
as manufacturers, wholesalers, and distributors of prescription drugs, to the exclusion of those entities that are not so licensed?
RESPONSE
Question 1 — Does the Pharmacy Board have the authority to licensemanufacturers, wholesalers, and distributors of ephedrine in anon-prescription form, pseudoephedrine, or phenylpropanolamine, pursuantto A.C.A. § 20-64-501 et seq. (which authorizes the Board to licensemanufacturers and wholesale distributors of prescription drugs)?
It is my opinion that A.C.A. § 20-64-501 et seq. does not give the Pharmacy Board the authority to license manufacturers and wholesale distributors to distribute non-prescription drugs such as ephedrine in a non-prescription form, pseudoephedrine, and phenylpropanolamine. Rather, the provisions of A.C.A. § 20-64-501 et seq. authorize the Board to license manufacturers and wholesale distributors of prescription drugs only. The pertinent statute states:
 (a) Every wholesale distributor who shall engage in the wholesale distribution of prescription drugs, to include without limitation, manufacturing in this state, shipping into this state, or selling or offering to sell in this state, shall register annually with the Arkansas State Board of Pharmacy by application for a permit on a form furnished by the board and accompanied by a fee of two hundred dollars ($200). The board may require a separate license for each facility directly or indirectly owned or operated by the same business entity within this state, or for a parent entity with divisions, subdivisions, subsidiaries, or affiliate companies within this state when operations are conducted at more than one (1) location, and there exists joint ownership and control among all the entities.
A.C.A. § 20-64-505(a).
The term "prescription drugs," as used in the above-quoted statute, is defined as follows:
 (5) "Prescription drug" means controlled substances legend drugs and veterinary legend drugs as defined herein[.]
A.C.A. § 20-64-503.
Clearly, the licensure that is authorized by A.C.A. § 20-64-505(a), quoted above, is limited to licensure for the distribution ofprescription drugs, which do not include ephedrine in a non-prescription form, pseudoephedrine, or phenylpropanolamine.
Accordingly, I must conclude that A.C.A. § 5-64-501 et seq. does not give the Pharmacy Board the authority to grant licenses for the distribution of these non-prescription drugs.
Question 2 — If not, does the Board have the authority pursuant to Act1209 to license and to collect licensing fees from manufacturers,wholesalers, and distributors of these non-prescription drugs,independent of A.C.A. § 20-64-501 et seq.?
It is my opinion that Act 1209, § 3 (amending A.C.A. § 5-64-1101), when read in conjunction with A.C.A. § 17-92-205, implicitly grants the Pharmacy Board the authority to grant licenses for the distribution of ephedrine in a non-prescription form, pseudoephedrine, or phenylpropanolamine, and to collect fees for such licenses.
The pertinent provision of Act 1209 of 2001, codified at A.C.A. §5-64-1101(a), states:
 It shall be unlawful for any person to possess more than five (5) grams of ephedrine, or nine (9) grams of pseudoephedrine or phenylpropanolamine, or their salts, optical isomers and salts of optical isomers, alone or in a mixture, except:
* * *
 (4)Any manufacturer, wholesaler, or distributor licensed by the State Board of Pharmacy who sells, transfers, or otherwise furnishes ephedrine, pseudoephedrine or phenylpropanolamine, or their salts, optical isomers and salts of optical isomers, to a licensed pharmacy, physician, dentist, podiatrist, veterinarian, or any person who possesses a sales and use tax permit issued by the Arkansas Department of Finance and Administration.
A.C.A. § 5-64-1101(a)(4) (as amended by Acts 2001, No. 1209, § 3) (emphasis added).
Because Act 1209 requires a license for the distribution of ephedrine, pseudoephedrine, and phenylpropanolamine, and because it explicitly refers to licensure by the Board in connection with the distribution of these drugs, even in their non-prescription form, the legislature can reasonably be inferred to have intended that the Board be authorized to issue the license that is required. Any other reading of the Act would result in an absurdity and in the Act's requirements being vain and meaningless. That is, such a reading would result in the conclusion that the Act requires a license that no entity has the authority to issue.[1]
The Arkansas Supreme Court has held that in interpreting statutory language, it is inappropriate to give a statute a reading that would result in an absurdity, or to presume that the legislature enacted a vain and meaningless law. See Yarbrough v. Witty, 336 Ark. 479, 987 S.W.2d 257
(1999); Lawhon Farm Servs. v. Brown, 335 Ark. 272, 984 S.W.2d 1 (1998);Citizens To Establish A Reform Party v. Priest, 325 Ark. 257,926 S.W.2d 432 (1996); Henson v. Fleet Mortgage Co., 319 Ark. 491,892 S.W.2d 250 (1995); Neely v. State, 317 Ark. 312,877 S.W.2d 589 (1994); Death andTotal Permanent Disability Trust Fund v. Whirlpool Corp.,39 Ark. App. 62, 837 S.W.2d 293 (1992). In contrast, an interpretation of the Act under which the Board has the implicit authority to issue licenses for the distribution of ephedrine, pseudoephedrine, and phenylpropanolamine would not lead to an absurd result of this nature.
Moreover, my interpretation of this section of the Act is bolstered by the fact that the Pharmacy Board is given broad authority to promulgate rules and regulations that are necessary to enforce the pharmacy laws of the state as it deems necessary to protect the public health. This authority is granted in the statutes that create the Board and that set forth its general authority.
The pertinent provision states:
 (a) The Arkansas State Board of Pharmacy shall have authority to make reasonable rules and regulations, not inconsistent with law, to carry out the purposes and intentions of this chapter and the pharmacy laws of this state which the board deems necessary to preserve and protect the public health.
A.C.A. § 17-92-205.
It is my opinion that Act 1209 should be deemed a "pharmacy law" of the type that the Pharmacy Board is authorized in A.C.A. § 17-92-205 to enforce, and regarding which it can make rules and regulations. I interpret Act 1209, § 3 to be a "pharmacy law," because it directly impacts the Pharmacy Board and matters over which the Pharmacy Board has been given exclusive administrative authority.
Accordingly, I conclude that Act 1209, when read in conjunction with A.C.A. § 17-92-205, implicitly authorizes the Pharmacy Board to grant licenses for the distribution of ephedrine in a non-prescription form, pseudoephedrine, and phenylpropanolamine, and to collect fees for such licenses.
Question 3 — If not, does Act 1209 require that these non-prescriptiondrugs be distributed by manufacturers, wholesalers or distributors whoare licensed by the Pharmacy Board pursuant to A.C.A. § 20-64-501 etseq. as manufacturers, wholesalers, and distributors of prescriptiondrugs, to the exclusion of those entities that are not so licensed?
Because I have opined in response to Question 2 that Act 1209 implicitly authorizes the Pharmacy Board to grant licenses and to collect licensing fees for the distribution of ephedrine in a non-prescription form, pseudoephedrine, and phenylpropanolamine, it follows I do not interpret Act 1209 to require that these non-prescription drugs be distributed by manufacturers, wholesalers or distributors who are licensed by the Pharmacy Board pursuant to A.C.A. § 20-64-501 et seq. as manufacturers, wholesalers, and distributors of prescription drugs, to the exclusion of those entities that are not so licensed. See response to Question 2.
My conclusion regarding this issue is also based on the fact that Act 1209 contains no indication that the legislature intended to proscribe distribution of these drugs by manufacturers and wholesalers who have traditionally distributed them, but who do not distribute prescription drugs and are therefore not licensed by the Board to distribute prescription drugs.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
[1] I also reject an interpretation of the Act under which only manufacturers and wholesalers who are licensed to distribute prescription drugs may distribute pseudoephedrine and phenylpropanolamine. See
response to Question 3.