Jamie HICKS and C.H., Appellants,

v.

Cheryl BATES and D.B., Nucor Steel of Arkansas, Liberty Mutual Fire Insurance Company, Death & Permanent Total Disability Trust Fund, Appellees.

No. CA 08–501.

Court of Appeals of Arkansas.

Feb. 11, 2009.

851

W. Ray Nickle; Ward & Reeves, Attorneys at Law, by: W. Edward Reeves, Caruthersville, MO; and William W. Carter, Hayti, MO, for appellants.

John Barttelt, Jonesboro, for appellee minor child.

Rieves, Rubens & Mayton, by: David C. Jones, Little Rock, for appellees Nucor Steel of Arkansas and Liberty Mutual Fire Insurance Co.

COURTNEY HUDSON HENRY, Judge.

Appellants Jamie Hicks and C.H. appeal the decision of the Arkansas Workers' Compensation Commission (Commission) awarding dependent-death benefits to D.B., the minor son of the decedent, Jerry Hicks. For reversal, appellants argue that the Commission erred in concluding that D.B.'s claim of benefits was not barred by the statute of limitations found in Arkansas Code Annotated section 11–9–702 (Supp.2007). Appellants also argue that substantial evidence does not support the Commission's finding that D.B. was wholly and actually dependent upon the decedent at the time of his death. We affirm the Commission.

The decedent, an employee of appellee Nucor Steel (Nucor), sustained a compensable injury on July 29, 2002, resulting in his death. The record reveals that he died on the premises of Nucor when the pinch point of a cold-roll welding machine crushed him. As a result, Nucor's insurer, appellee Liberty Mutual Fire Insurance Company (Liberty), paid a total of $75,000 in dependency benefits to appellant Hicks, who is the decedent's widow, and their minor child, appellant C.H. Appellee Death and Permanent Total Disability Trust Fund (Fund) thereafter assumed liability and made weekly payments of $425 to appellants.

Prior to his marriage to appellant Hicks, the decedent and appellee Cheryl Bates (Bates) were involved in a relationship, which ended when Bates was seven months' pregnant. The couple never married but had one child, D.B., who was born on September 14, 1995. Based upon the testimony of Bates and the decedent's mother, the Commission learned that the decedent saw D.B. on the date of his birth and interacted with him on a regular basis. D.B. visited the decedent at his parents' home, at Bates's restaurant, and at a local park. Photographs introduced into evidence depicted D.B. with the decedent's family celebrating holidays together. The decedent made monthly child-support payments to Bates of an agreed-upon $150, an amount never actually ordered by a court. While the decedent's child-support payments became sporadic in 1998, he paid Bates in more frequent, smaller increments until his death in 2002.

Bates married her current husband in 1996, and they resided with D.B. in Dexter, Missouri. During that time, the decedent continued his periodic visits with his son. When Bates's husband wished to adopt D.B., the decedent would not allow it. While Bates's husband never believed himself to be D.B.'s father, he and Bates nevertheless added his name as the father to D.B.'s birth certificate. On July 30, 2002, Bates learned of the decedent's death, and the decedent's mother recommended to Bates that she apply for social-security survivor's benefits. Following the application, the Social Security Administration found D.B. to be the decedent's natural child, and D.B. began receiving dependency benefits.

Bates became aware of D.B.'s entitlement to workers'-compensation benefits in February 2006. Immediately thereafter, Bates arranged for DNA testing, which concluded that the decedent was D.B.'s biological father. On March 10, 2006, a Missouri circuit court appointed Bates as D.B.'s legal guardian and conservator.

On May 17, 2006, Bates filed a claim for workers'-compensation dependent benefits on behalf of D.B. The administrative law judge (ALJ) conducted a hearing on December 6, 2006, and made the following findings: (1) D.B. was the son of the decedent and Bates; (2) D.B. was wholly and actually dependent upon the decedent at the time of his death, and as a result, D.B. was entitled to dependent benefits pursuant to Arkansas Code Annotated section 11–9–527 (Repl.2002); and (3) the claim was not barred under the provisions of section 11–9–702.

On December 21, 2007, the Commission entered an opinion in agreement with the ALJ's decision that D.B. was the decedent's minor son and that he was wholly and actually dependent upon the decedent at the time of his death. The Commission also found that D.B.'s claim was not barred by the statute of limitations. However, the Commission disagreed with the ALJ's finding that Nucor was liable for benefits, and subsequently, the Commission entered a second opinion allocating the disbursement of benefits. Appellants now bring this appeal.

■ For the first point on appeal, appellants argue that the Commission erred in interpreting section 11–9–702 and finding that D.B.'s claim for dependent-death benefits was not barred by the statute of limitations. As a general rule, we recognize a two-year statute of limitations to file a workers'-compensation claim following a death. Ark.Code Ann. § 11–9–702(a)(3).

However, an exception to the two-year statute of limitations exists for minors:

(2) The provisions of subsection (a) or (b) of this section shall not apply to a mental incompetent or minor so long as the person has no guardian or similar legal representative. The limitations prescribed in subsection (a) or (b) of this section shall apply to the ... minor from the date of the appointment of a guardian or similar legal representative for that person, and where no guardian or similar representative has been appointed, to a minor upon obtainment of majority.

Ark.Code Ann. § 11–9–702(f)(2). In other words, in the case of a minor, the statute of limitations does not begin to run until the minor is appointed a guardian or similar legal representative or until the minor reaches majority.

Appellants contend that the exception provision is inapplicable to D.B. because he was under the care of his mother, a natural guardian, since his birth. Appellants dismiss that part of the exception permitting a minor to file a claim on his or her own behalf after age eighteen by arguing that this particular clause applies only to children "who do not have a living biological parent." Here, it is undisputed that the decedent's work-related death occurred on July 29, 2002; that a Missouri circuit court appointed Bates as D.B.'s guardian and conservator on March 10, 2006; and that Bates filed a claim for workers'-compensation dependent benefits on May 17, 2006. Thus, four years elapsed between the decedent's death and the filing of D.B.'s claim. Therefore, the relevant question in this case is whether the foregoing exception for minors, found in subsection 11–9–702(f)(2), applies to D.B., who lived with his natural parent who was not appointed his guardian until March 10, 2006.

■ This issue requires us to interpret a workers'-compensation statute. We review issues of statutory construction *de novo*. *Weisenbach v. Kirk*, 104 Ark.App. 245, 290 S.W.3d 614 (2009). The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Id.* In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Arkansas Comprehensive Health Ins. Pool v. Denton*, 374 Ark. 162, 286 S.W.3d 698 (2008). We construe the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. *Id.* When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. *Mamo Transp., Inc. v. Williams*, 375 Ark. 97, 289 S.W.3d 79 (2008). However, we will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. *Id.*

The Commission found that subsection 11–9–702(f)(2) "operates to protect all minors should they not have a legal guardian appointed and their natural guardian fails to act on [his or her] behalf. Once the minor's disability is removed and he or she reaches majority, subsection (f) permits them to file a claim on [his or her] behalf." The Commission further found that, because Bates was appointed D.B.'s guardian on March 10, 2006, she filed a timely claim under subsection 11–9–702(f)(2).

We agree with the Commission's interpretation of subsection 11–9–702(f)(2) that

Bates was not D.B.'s guardian simply because she was his mother. The term "guardian" is not defined in our workers'-compensation statutes. However, we attach great significance to the statute's use of the word "appointment." The concept of appointment connotes a legal action of endowing a formal guardian with the power to protect a minor, his or her legal rights, and his or her estate. *See* Ark. Code Ann. §§ 28–65–201 to –323 (Repl. 2004 and Supp.2007) (authorizing the appointment, powers, and duties of court-appointed guardians). Furthermore, even if D.B.'s mother had not been court-appointed as his guardian, D.B. could file a claim up to two years beyond reaching the age of majority. Despite appellants' assertions to the contrary, we glean from subsection 11–9–702(f)(2) that the legislature intended to protect minors, residing with a natural parent who fails to pursue a claim on their behalf, by permitting them to file a claim after age eighteen. Thus, a plain-language reading of the statute as a whole undercuts appellants' claim that D.B. had a "guardian" in his mother prior to her appointment by the Missouri court.

Additionally, we note that Arkansas Code Annotated section 11–9–801 (Repl. 2002) authorizes benefits to be paid to a minor's "legally appointed guardian."[1] This statute further demonstrates the legislative intent that a guardian is one who is sanctioned by judicial action. It also unequivocally allows Bates to act in her capacity as the appointed guardian. Our case law requires us to reconcile statutory provisions relating to the same subject to make them sensible, consistent, and harmonious. *Weisenbach, supra.* When we

---

1. Section 11–9–801 approves the payment of a claim to the guardian of the minor's estate. This statutory provision provides in pertinent part:

(c) If the compensation beneficiary is a mental incompetent or minor of tender years or immature judgment, the Workers' Compensation Commission, in the exercise of its discretion, may direct that payment shall be made to a legally appointed guardian of the estate of the incompetent minor.

read subsection 11–9–702(f)(2) and section 11–9–801 together, we are convinced that the legislature contemplated court action for the appointment of a guardian. For the foregoing reasons, we hold that the Commission properly allowed D.B.'s claim for dependent-death benefits pursuant to subsection 11–9–702(f)(2), and we affirm the Commission's decision.

■■■■■ For the second point on appeal, appellants argue that D.B. was not "wholly and actually dependent" upon the decedent at the time of his death under Arkansas Code Annotated section 11–9–527(c) (Repl. 2002). With regard to the Commission's findings of fact, this court will view the evidence in the light most favorable to the Commission's decision and affirm when that decision is supported by substantial evidence. *Parson v. Arkansas Methodist Hosp.*, 103 Ark.App. 178, 287 S.W.3d 645 (2008). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Dorris v. Townsends of Ark., Inc.*, 93 Ark.App. 208, 218 S.W.3d 351 (2005). The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm the decision. *Id.* The substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the grant of relief. *Williams v. Arkansas Oak Flooring, Co.*, 267 Ark. 810, 590 S.W.2d 328 (Ark.App. 1979). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id.* Dependency is a fact question to be determined in light of the surrounding circumstances. *Finley v. Farm Cat, Inc.*, 103 Ark.App. 292, 288 S.W.3d 685 (2008).

When the Commission makes a finding of fact, that finding carries the weight of a jury conclusion. *Id.*

Arkansas Code Annotated section 11–9–527(c) provides in pertinent part:

> Subject to the limitations as set out in §§ 11–9–501–11–9–506, compensation for the death of an employee shall be paid to those persons *who were wholly and actually dependent upon the deceased employee* . . . .

Ark.Code Ann. § 11–9–527(c) (emphasis added). Subsection (h) provides that "[a]ll questions of dependency shall be determined as of the time of the injury." Ark. Code Ann. § 11–9–527(h).

The supreme court discussed the application of subsection 11–9–527(c) in *Lawhon Farm Services v. Brown*, 335 Ark. 272, 984 S.W.2d 1 (1998), where the court noted that, in cases where children are not living with the employee at the time of the employee's death, there must be some showing of actual dependency. "Actually dependent" does not require total dependency but rather a showing of actual support or a reasonable expectation of support. *Fordyce Concrete v. Garth*, 84 Ark. App. 256, 139 S.W.3d 154 (2003).

In the instant case, substantial evidence supports the Commission's finding that D.B. was "wholly and actually dependent" upon the decedent at the time of his death. Although he was not listed as the father on D.B.'s birth certificate, the decedent acknowledged D.B. as his son beginning at the time of his birth. The evidence as a whole demonstrated that the decedent saw D.B. on the day of his birth, that the decedent maintained regular visits with D.B., and that the decedent celebrated holidays with his son. Moreover, the decedent contributed, albeit sporadically at times, child-support payments to Bates for D.B.'s support until his death. We also recognize that the Social Security Adminis-

tration regards D.B. as the decedent's natural child and that D.B. received social-security dependency benefits. Based upon our standard of review, we conclude that, pursuant to subsection 11–9–527(c), substantial evidence supports the Commission's finding that D.B. was "wholly and actually dependent" upon the decedent at the time of his death. Accordingly, we affirm the Commission's findings.

Affirmed.

GLADWIN and BAKER, JJ., agree.