2011 Ark. App. 682

**WHITE OAK CONSTRUCTION CO. and American Interstate Insurance Co., Appellants**

v.

**Alberto OLVERA (Deceased) & Death and Permanent Total Disability Trust Fund, Appellees.**

**No. CA 11–573.**

Court of Appeals of Arkansas.

Nov. 9, 2011.

Michael Edward Ryburn, Little Rock, for appellant.

John Gary Davis, Little Rock, for appellee.

DAVID M. GLOVER, Judge.

White Oak Construction Company and its carrier appeal from the Commission's decision, which affirmed and adopted the ALJ's decision, to award dependent benefits to deceased employee Alberto Olvera's parents. White Oak contends (1) that there is not a substantial evidentiary basis in the record for the Commission's determination that the appellees were wholly and actually dependent on the deceased employee; (2) that the Commission erred by not using Arkansas Code Annotated section 11-9-111 because the parents are alien dependents; (3) that the parents did not prove they were dependent for one year prior to July 26, 2007, pursuant to Arkansas Code Annotated section 11-9-111; and (4) that if the parents are found to be dependent, they are only partially dependent under Arkansas Code Annotated section 11-9-527. We affirm.

## Background

Alberto Olvera died on July 28, 2007, after falling from a roof while working for White Oak Construction Company. He was working in the United States under a work visa; his citizenship was in Mexico, where his parents lived. Alberto's parents' names are Flora Olvera Moran and Jesus Verde Cabello. Although Alberto had initially worked for White Oak for eight months without a visa, he returned to Mexico to obtain a visa, and then resumed work in the United States. He worked for White Oak for six additional months before dying in the fall from a roof.

His father, Jesus, testified that Alberto sent money home to Mexico to help support him and Flora and the other children; that they had struggled to pay their bills after Alberto's death; and that he had been a welder but had to stop about twenty years ago because of impaired vision. He said that the money from Alberto was the only income he had until he started receiving his pension and the salary he made as a babysitter. He testified that Alberto would send money to them about every fifteen days. Jesus explained that he now receives social security in the amount of 2800 pesos per month and that those payments began in 2008. He acknowledged that Alberto's money was sent to Flora. He said that he did not have a bank account and did not have records of how the money was spent, but that it was used to buy food and pay for other expenses. He stated that each time his son made a money transfer, he would get a receipt, but that he did not have those receipts. He testified that Alberto had supported him and Flora from 1990 until the time of his death.

Alberto's mother, Flora, testified that she and Jesus had been married and lived together since 1971; that they have five children, including Alberto; and that Alberto sent money to her and Jesus until his death. She stated that she had not worked outside the home during the entire marriage, that one son still lives with them, and that the other three children are married and have families of their own. She explained that the only source of income for her and Jesus since Alberto's death is Jesus' pension. She explained that they had been "living on a shoestring" since Alberto's death; that they did not have a bank account; that Alberto would send the money to her and she would distribute the money to Jesus; and that she received the payments about every fifteen or twenty days. She testified that she last saw Alberto in December 2006 in Mexico; that he did not work during the six months that he was in Mexico; that he returned to the United States during the first week of May 2007; and that he was the only family member from whom she

received money during 2006 or 2007. She stated that she handled the household money, paid the bills in cash, and spent the money from Alberto on food, clothing, shoes, water, electricity, gas, and medications.

The records of money transfers made to Flora Olvera Moran showed:

1) March 27, 2006—2,152.00 Pesos

2) April 17, 2006—7,117.00 Pesos ($642.00)

3) May 15, 2006—3,237.00 Pesos ($290.40)

4) May 27, 2006—2,158.90 Pesos ($193.66)

5) June 5, 2006—7,290.00 Pesos ($645.99)

6) July 3, 2006—11,200.00 Pesos ($1,004.12)

7) August 21, 2006—21,280.00 Pesos ($1,070.00)

8) September 11, 2006—6,518.00 Pesos ($589.05)

9) November 21, 2006—8,648.00 Pesos ($786.37)

10) May 21, 2007—1,070.00 Pesos ($95.99)

11) July 16, 2007—8,580.00 Pesos ($796.61)

12) July 25, 2007—5,345.00 Pesos ($491.91)

The ALJ found in pertinent part that at the time of Alberto's death, neither Alberto's mother nor his father was working; that the credible evidence established that Alberto was the sole primary source of income to the household from 1999 until Alberto's death in 2007, and that it was not until Alberto's death that his father returned to the work force by taking care of children, and began collecting a monthly government pension. The ALJ concluded that the evidence clearly demonstrated that Alberto had provided financial support to his parents for at least one year prior to his death and that his parents had a reasonable expectation of support from Alberto.

*Standard of Review*

As this court explained in *Robinson v. Ed Williams Constr. Co.*, 38 Ark. App. 90, 94, 828 S.W.2d 860, 862–63 (1992):

Dependency is a fact question to be determined in the light of the surrounding circumstances. The findings of the Workers' Compensation Commission must be upheld on review if there is substantial evidence to support them. The issue on appeal is not whether this court would have reached the same results as the Commission on this record or whether the testimony would have supported a finding contrary to the one made; the question here is whether the evidence supports the findings which the Commission made. Before we can reverse a decision of the Commission, we must be convinced that fair-minded persons with the same facts before them could not have reached the same conclusion reached by the Commission.

(Citations omitted.) In determining the sufficiency of the evidence to sustain the findings of the Workers' Compensation Commission, we review the evidence in the light most favorable to the Commission's findings and affirm if they are supported by substantial evidence. *Lawhon Farm Servs. v. Brown*, 335 Ark. 272, 984 S.W.2d 1 (1998).

*(1) Wholly and actually dependent*

For its first point of appeal, White Oak challenges the sufficiency of the evidence supporting the Commission's award of benefits, arguing that "there is not a substantial evidentiary basis in the record for the Commission's determination that the appellees were wholly and actually dependent on the deceased employee." We disagree.

Arkansas Code Annotated section 11–9–527 (Repl.2002) provides in pertinent part:

11–9–527. Compensation for death.

. . . .

(c) BENEFICIARIES—AMOUNTS. Subject to the limitations as set out in §§ 11–9–501–11–9–506, compensation for the death of an employee shall be paid to those persons who were *wholly and actually dependent upon the deceased employee* in the following percentage of the average weekly wage of the employee and in the following order of preference:

. . . .

(4) To the parents, twenty-five percent (25%) each[.]

(Emphasis added.)

Our supreme court addressed the statutory phrase "wholly and actually dependent" in *Lawhon Farm Servs. v. Brown*, 335 Ark. 272, 280–81, 984 S.W.2d 1, 5 (1998):

The history of § 11–9–527 and the record of our interpretation of it are helpful. Originally, the term "wholly dependent" was construed to refer to those ordinarily recognized in law as dependents. A conclusive presumption thus arose to the effect that a wife or child of a deceased employee who was killed in the course and scope of his employment was a dependent for purposes of the statute. *See Chicago Mill & Timber [Lumber] Co. v. Smith*, 228 Ark. 876, 310 S.W.2d 803 (1958). In 1976, the General Assembly amended § 11–9–527 to provide that a widow or widower shall establish "actual" dependency before she or he will be entitled to benefits. We interpreted that change as eliminating the conclusive presumption and requiring a widow to establish facts showing dependency upon the decedent before being entitled to benefits. *Roach Mfg. Co. v. Cole*, 265 Ark. 908, 582 S.W.2d 268 (1979). We held that dependency was to be determined in light of the surrounding circumstances, *citing Smith v. Farm Service Coop.*, 244 Ark. 119, 424 S.W.2d 147 (1968), and in light of prior events and not controlled by an unusual, temporary situation, *citing Nolen v. Wortz Biscuit Co.*, 210 Ark. 446, 196 S.W.2d 899 (1946).

While the widow in the *Roach Mfg. Co.* case failed to show that she was actually dependent on the decedent, her child was held to be actually dependent. We quoted from Professor Larson's treatise: "Proof of bare legal obligation to support, unaccompanied by either actual support or reasonable expectation of support, is ordinarily not enough to satisfy the requirement of actual dependency." LARSON, WORKMEN'S COMPENSATION LAW § 63 (1976). Because the widow had not attempted to obtain support for herself, she was unable to meet the requirement, but we held that the child, unable to act for herself, was not bound by the ruling with respect to the widow and was dependent, as she had a reasonable expectation of support from the deceased worker.

The Commission ruled that all three children in this case were "wholly dependent" upon Mr. Brown in accordance with the interpretation of that term in *Chicago Mill & Lumber Co. v. Smith, supra*. The requirement of "actual dependency," added to the statute in 1979, as interpreted in *Roach Mfg. Co. v. Cole, supra*, was met as well. The Commission ruled that the children had a "reasonable expectancy of future support" and were "wholly and actually" dependent on Mr. Brown at the time of his work-related death.

White Oak basically contends:

We do not know who sent the money orders, how they were spent, or who ended up using them. The orders were

dated at erratic intervals and stopped for months. Appellees had no bank records, no invoices, and no proof that the money they allegedly received was not being held or used for the deceased son. The argument totally discounts the testimony of Flora and Jesus, the decedent's parents. They both testified that Alberto sent them money on a regular basis from the United States |₇while he was working here, but that he had also supported them since 1990 when he was working in Mexico refilling fire extinguishers. They testified that the money was critical to them; that they used it for essentials; that they received no other money from family members; that, in fact, they often helped their other children; and that they paid their bills in cash. The money-transfer records were made out to Flora, but she testified that she took care of household bills and that she distributed the money to Jesus as needed.

■ Moreover, as this court explained in *Robinson, supra,* "actual dependency" does not require a showing of *total* dependence. A finding of some measure of actual support or a reasonable expectation of it will suffice.

Under our standard of review, dependency is a factual question that is to be determined in the light of the surrounding circumstances. Viewing the evidence in the light most favorable to the Commission's findings, we are convinced that fair-minded persons with the same facts before them could have reached the Commission's decision.

#### (2) *Arkansas Code Annotated section 11–9–111 ("father or mother")*

■ For its second point of appeal, White Oak asserts that the "Commission erred by not using Arkansas Code Annotated section 11–9–111 (Repl.2002) because appellees are alien dependents." Its basic contention is that it was error for the Commission to award benefits to both parents because the use of the word "or" in the statute allows benefits for one parent or the other, but not both. We disagree.

Section 11–9–111 provides in pertinent part:

(a) *Compensation to alien nonresidents of the United States or Canada shall be the same in amount as provided for residents,* except that alien nonresident dependents in ₈any foreign country shall be limited to the surviving wife or children or, if there is no surviving wife or children, to the surviving *father or mother* whom the employee has supported, either wholly or in part, for the period of one (1) year prior to the date of the injury.

(Emphasis added.) White Oak contends that the phrase, "father *or* mother" means that only one alien nonresident dependent parent can be eligible for benefits. The Commission rejected this argument and we agree.

■ As quoted previously, Arkansas Code Annotated section 11–9–527 sets forth the amount of death benefits that are to be awarded to parents: "(4) To the parents, twenty-five percent (25%) *each.*" (Emphasis added.) Section 11–9–111(a) ensures that residents and nonresidents receive equal compensation and limits the class of alien-nonresident dependents. *Death & Perm. Total Dis. Trust Fund v. Rodriguez,* 104 Ark.App. 375, 292 S.W.3d 827 (2009). Nothing in section 11–9–527 excludes alien nonresidents from receiving benefits, and nothing in section 11–9–111 renders the provisions of section 11–9–527 inapplicable except to the extent that certain beneficiaries are excluded. *Id.* That is, section 11–9–527 provides for death benefits to a much broader group, *e.g.,* brothers, sisters, grandchildren, and grandparents, Ark.Code Ann. § 11–9–527(c)(5) (Repl.2002), while section 11–9–

111 limits recipients of death benefits "to the surviving wife or children or, if there is no surviving wife or children, to the surviving father or mother whom the employee has supported, either wholly or in part, for the period of one (1) year prior to the date of the injury." Sections 11–9–527 and 11–9–111 must be read together to understand the legislature's intent. Even when statutes are to be strictly construed, they must be construed in their entirety, harmonizing each subsection where possible. *Lawhon Farm Servs. v. Brown, supra.* We are not convinced that by the use of the word "or" to separate the words father and mother in section 11–9–111, the legislature intended to render the award of benefits to each parent provided by section 11–9–527 void.

### (3) *Arkansas Code Annotated section 11–9–111 ("one year prior to the date of injury")*

Under this point, White Oak's basic argument is that if the parents "were dependent on the deceased employee, [they] were only dependent for about two months prior to the death of the employee." We disagree.

Section 11–9–111 states in pertinent part that the support must have been provided for "the period of one (1) year prior to the date of the injury." However, it does not limit that support to specific amounts of money, or specific time frames, or even the performance of "documented" work. In attempting to limit the period of support provided by Alberto to the two months immediately preceding his death, White Oak dismisses the money transfers that were made from March 27, 2006, through November 21, 2006, when Alberto was working for White Oak without proper documentation. It also dismisses the testimony from the hearing that the family had basically been dependent upon Alberto since 1990, which apparently was when Jesus could no longer perform his welding

job because of vision trouble. There was also testimony that during the six-month period when Alberto returned to Mexico to obtain his work visa, his parents lived on what they had saved from the money that he had sent from the United States earlier.

The one-year period prior to Alberto's death would have been July 2006 through July 2007. The testimony presented by his parents, coupled with a portion of the earlier shown records of money transfers (July 3, 2006 through July 25, 2007), are sufficient to support the Commission's determination that Alberto provided support for one year prior to the date of his death.

### (4) *Partial dependency*

For its final point, White Oak contends that if the parents are determined to be dependent, that they are only partially dependent under Arkansas Code Annotated section 11–9–527(i)(1), which provides in pertinent part:

(i) **Partial Dependency.** (1) If the employee leaves dependents who are only partially dependent upon his or her earnings for support at the time of injury, the compensation payable for partial dependency shall be in the proportion that the partial dependency bears to total dependency.

We do not address this issue because it was neither presented to the ALJ nor addressed by the ALJ. Consequently, it was not properly preserved for our review. Even if we were to address this issue, it would have no merit in light of our discussion under the first point of appeal regarding the sufficiency of the evidence supporting the Commission's decision.

Affirmed.

ROBBINS and WYNNE, JJ., agree.